[L. A. No. 23273.   In Bank.   July 8, 1955.]

PACIFIC FINANCE CORPORATION (a Corporation), Respondent, v. ALVIN HARRISON FOUST et al., Appellants.

854

William T. Selby and Glenn C. Garman for Appellants.

Hugh M. Foster, Jr., Ivan C. Tagert, Mansfield A. Mills, William A. Reppy and F. Gile Tiffany, Jr., for Respondent.

SPENCE, J.—Plaintiff sought to quiet its title to 10 used automobiles. The cars had been delivered by defendants to a used car dealer for sale. The basic questions were whether said dealer was a factor in the transaction, and whether an estoppel operated in plaintiff's favor. The trial court found for plaintiff on both issues. From the judgment accordingly entered, defendants appeal, contending in the main that the evidence does not sustain the findings. However, viewing the record in the light most favorable to plaintiff, and indulging every inference in its favor in determining whether there is substantial evidence in support of the challenged findings (4 Cal.Jur.2d § 606, p. 485; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]), defendants cannot prevail.

Defendant Universal Motors, a copartnership composed of defendants Foust, Huffman, and Fulwiler, delivered the 10 used cars to a used car dealer, Lonnie's Used Cars. The cars were to be placed on Lonnie's lot and displayed for sale. It was agreed that when the cars were sold, Lonnie's was to remit to Universal a certain amount for each car, and any sum in excess of that amount was Lonnie's profit. When Lonnie's took delivery of each car, it signed a memorandum identifying the car by number and also providing, in part, as follows: "It is understood and agreed that the title of ownership does not pass to me (Lonnie's) until the final cash payment is made." This, however, was not the entire agreement. The trial court found that the agreement, partly oral and partly in writing, also included the understanding that Lonnie's could sell the automobiles consigned to it in the regular course of business on credit pursuant to condi-

tional sales contracts and could assign the contracts. Universal retained the certificates of ownership (the pink slips) on the 10 cars.

Lonnie's sold the 10 cars but did not pay Universal for them, and finally became insolvent. Each car had been sold to an individual buyer on a conditional sales contract, naming Lonnie's as seller. Lonnie's then assigned the contracts to plaintiff, Pacific Finance Company, and the latter paid to Lonnie's that part of the purchase price which the buyer had borrowed, less a time-price differential. At the same time, Lonnie's executed a document called ''In Lieu of Pink,'' whereby Lonnie's agreed to furnish the pink slip for each car, showing ownership in plaintiff, when issued by the Department of Motor Vehicles. It appears that this was customary practice in the used car business because it usually took three or three-and-one-half months to get pink slips through the department. Neither the individual buyers nor plaintiff, the finance company, then knew of Universal's interest in the cars.

When Pacific Finance learned that Universal claimed ownership of the cars, it brought this action to quiet title. At the trial it was stipulated that this action was not intended to affect the interests of the individual buyers of the cars; and that the controversy was between Universal and Pacific Finance only. The trial court found, among other things, that it was the intention of the agreement between Universal and Lonnie's to create a consignment or factorage with respect to the cars in question; that Universal gave to Lonnie's authority to sell the cars on conditional sales contracts and to assign those contracts to financing agencies like Pacific; and that in addition to these 10 cars, Universal and Lonnie's for a number of months had followed the same method of selling and financing other cars through conditional sales contracts assigned to Pacific. It was further found that prior to making its arrangements with Lonnie's, Pacific Finance had investigated Lonnie's financial status and inspected the cars then at Lonnie's lot for sale, and from time to time Pacific received and checked supplementary inventories of the cars to be sold by Lonnie's; that having established a ''line of business'' with Lonnie's, Pacific was entitled to rely on the customs of the trade whereby the used car dealer attended to reissuance of the certificates of ownership showing the conditional buyer as the registered owner and the financing agency as the legal owner of the car; that Universal made no check on the disposition of the cars given

to Lonnie's to sell, nor did Universal instruct Lonnie's to disclose Universal's interest in the cars; that Pacific used reasonable care in its dealings with Lonnie's, but Universal was negligent in its arrangements with Lonnie's insofar as making possible any loss suffered with respect to the cars. Judgment therefore was entered for plaintiff, Pacific Finance, and defendants were directed to deliver to plaintiff the certificates of ownership on the cars in question for reissuance by the Department of Motor Vehicles so as to show Pacific Finance as legal owner.

There can be no doubt as to the sufficiency of the evidence to support the findings on the factorship issue. It was stipulated at the trial that Lonnie's sold the cars in question in its regular course of business. Defendant Foust, one of Universal's partners, testified as to the business arrangements between Universal and Lonnie's; that Lonnie's was free to sell the cars in its own name as desired—for cash or credit, or finance credit sales; that Universal was not interested in how the cars were sold so long as Universal received the agreed amount from Lonnie's; that Universal would retain the pink slip until Lonnie's paid the stipulated amount, when it would be delivered to Lonnie's for reregistration with the Department of Motor Vehicles; and that a number of cars, perhaps 80 or 100, had been sold by Lonnie's for Universal in that fashion. In short, Universal consigned the cars to Lonnie's and Lonnie's held them for sale, with authority to procure financing for the individual buyer through a financing agency. Plaintiff's manager testified that the first knowledge plaintiff had of Universal's interest was through a telephone conversation he had with defendant Foust in August, 1952, some three months following the time when the first conditional sales contract on these 10 cars was assigned to plaintiff; that Foust at that time asked "Did you know we (Universal) had 10 cars consigned with Lonnie's and that you folks (plaintiff) have the contracts on them, but we have never been paid off"; and that he, plaintiff's manager, answered that he had previously had no such information.

██ A dealer in used cars is a factor within the definition of Civil Code, section 2026, when the owner of the car puts it in the dealer's possession to be sold. (*Siegel* v. *Bayless*, 113 Cal.App.2d 661, 663 [248 P.2d 968].) As such he has "ostensible authority to deal with the property of his principal as his own, in transactions with persons not having

notice of the actual ownership.'' (Civ. Code, § 2369.) From the evidence above reviewed, it could readily be inferred that Universal intended Lonnie's to be its factor, with authority to arrange for the financing of credit sales. In the absence of restrictions, a factor who sells goods entrusted to his possession for that purpose has implied power to receive payment, and to give a receipt and discharge to the purchaser, and a payment to the factor is binding on the principal, although the factor misappropriates the funds. (35 C.J.S. § 12, p. 407.) Such principles were applied in *Kenny* v. *Christianson,* 200 Cal. 419 [253 P. 715, 50 A.L.R. 1297], and *Siegel* v. *Bayless, supra,* 113 Cal.App.2d 661, in each of which cases the purchaser paid the factor, who absconded with the money, and the original owner unavailingly sought to recover possession of the automobile from the purchaser. The same principle should apply here, for plaintiff, though a finance company dealing with Lonnie's as the ostensible owner of the cars, paid Lonnie's without any notice of Universal's interest or of any facts which would put plaintiff on inquiry.

Defendants contend that title to the cars was in Universal until divested in some manner, and that by the terms of the Vehicle Code the only way in which title could have been transferred was by endorsement and delivery of the pink slips. · (§ 186.) To this point, defendants argue that plaintiff, before it paid Lonnie's, should have insisted on Lonnie's producing the pink slips evidencing ownership of the cars; that if such inquiry had been made, Universal's interest would have been revealed; and that plaintiff should therefore bear the loss which its own negligence produced. But under the particular circumstances here involved, Universal is estopped to rely on the registration requirements of the Vehicle Code. Universal's conduct in turning over the cars to Lonnie's, letting them remain on Lonnie's lot for sale in Lonnie's regular course of business, and with no restriction as to any arrangements Lonnie's might make with a finance agency such as plaintiff, justifies an inference of negligence on Universal's part. It is likewise inferrable from the evidence that in its continued course of dealing with Lonnie's, Universal knew of Lonnie's practice to sell the cars entrusted to it under conditional sales contracts and to assign such contracts for financing, and that Universal approved such procedure. In short, Universal created the situation upon which plaintiff relied and acted.

Moreover, defendant Foust admitted that Universal made no check of Lonnie's practices to see whether the cars were sold through any credit financing or whether Lonnie's had received the purchase price and had failed to remit to Universal. On the other hand, it is undisputed that plaintiff had no knowledge of Universal's interest at the time it took the conditional sales contracts on the cars in question. Nor does it appear that plaintiff was required to make inquiry of Lonnie's for the pink slips on the cars before paying the purchase price, for plaintiff was entitled to rely on the trade custom whereby there would be a delay of three to three-and-one-half months in the reissuance of pink slips by the Department of Motor Vehicles. Universal knew of this trade custom, and that a financing agency such as plaintiff might rely on that custom. Accordingly, plaintiff accepted the ''in lieu of pink'' document from Lonnie's on each of the cars involved, awaiting the reissuance of the pink slip. Plaintiff's manager testified that plaintiff had set up a check system which would bring attention to the file of a particular transaction within approximately three months from the date of assignment of the conditional sales contract by a used car dealer such as Lonnie's; and that, in fact, with respect to the cars here involved, the first ''check period'' on the pink slips would have been due a few days *after* defendant Foust had notified plaintiff's manager of Universal's interest.

From this set of circumstances the trial court found that Universal was negligent in its dealings with Lonnie's; that Lonnie's at no time exceeded its authority in selling the cars upon conditional sales contracts and arranging for financing through such contracts; and that plaintiff was not negligent but used reasonable care in its dealings with Lonnie's. These were all essentially questions of fact, which were resolved in plaintiff's favor upon substantial evidence.

■ Defendants argue that plaintiff cannot rely on any element of estoppel because of its failure to plead such facts. (*State Credit Corp.* v. *Ranger,* 101 Cal.App. 310, 314 [281 P. 663].) Although it is true that an estoppel ordinarily should be pleaded, the evidence on which the court based its findings on the estoppel theory was admitted without objection, the issue was fully litigated by the parties, and any defect in pleading such matter was therefore waived. (18 Cal.Jur.2d § 13, pp. 411-412; *Foster* v. *Fisher,* 44 Cal.App.2d 33, 37 [111 P.2d 935].) ■ The situation here makes applicable the maxim that ''Where one of two innocent per-

sons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Civ. Code, § 3543.) The loss must therefore fall upon Universal, and the trial court was justified in so concluding despite the provisions of the Vehicle Code regulating the transfer of ownership. (See *Wargin* v. *Wargin,* 29 Cal.2d 843, 845-846 [180 P.2d 349].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Mussell J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.