[S. F. No. 19308. In Bank. Oct. 14, 1955.]

KATIE MARTINEZ et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Defendants; WILLIAM LOPEZ MARTINEZ et al., Appellants

John Said and Crossland & Crossland for Appellants.

Higgs, Fletcher & Mack, DeWitt A. Higgs, Betts, Ely & Loomis, Spray, Gould & Bowers, Parker, Stanbury, Reese & McGee, Early, Maslach, Foran & Williams and Teague & Dixon as Amici Curiae on behalf of Appellants.

John D. Chinello and Lawrence E. Viau, Jr., for Respondents.

SPENCE, J.—Plaintiffs sought damages for personal injuries sustained when an automobile in which they were riding collided with a Southern Pacific switch engine. The automobile was owned by defendant Carmen R. Martinez, and

was being driven by his son, defendant William Lopez Martinez. The complaint alleged that William was driving the automobile with the permission of its owner, Carmen; that each plaintiff was "a passenger for consideration": and that the collision and resulting injuries were caused by the joint and concurrent negligence of William and the engineer operating the switch engine. The answers of defendants William and Carmen Martinez denied plaintiffs' status as passengers and William's negligence. The trial court found that the automobile was owned by Carmen Martinez and, with his permission, was being operated by William Martinez; that plaintiffs were riding as passengers for consideration therein; and that the accident was caused solely by the negligence of William Martinez. Accordingly, defendants Southern Pacific Company and its engineer were exonerated from liability but judgment was entered in favor of plaintiffs Katie Martinez and Delia C. Martinez for the respective amounts of $5,961 and $5,281.50 as against defendants William and Carmen Martinez. From such judgment defendants William and Carmen Martinez appeal.

Appellants' main contention is that the evidence is insufficient to sustain the finding that respondents were passengers and not guests within the meaning of section 403 of the Vehicle Code, commonly known as the "guest law." However, taking the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to respondents, as required by the time-honored rule (4 Cal.Jur. 2d, § 606, p. 485; *Pacific Finance Corp.* v. *Foust*, 44 Cal.2d 853, 854 [285 P.2d 632]; *Estate of Arbulich*, 41 Cal.2d 86, 88 [257 P.2d 433]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Estate of Bristol*, 23 Cal.2d 221. 223 [143 P.2d 689]), there appears to be substantial support for the contested finding. Appellant Carmen Martinez raises these two further points. (1) That respondent Katie Martinez, his daughter, was an unemancipated minor at the time of the accident and therefore had no right of action against him (*Trudell* v. *Leatherby*, 212 Cal. 678, 680 [300 P. 7]; *Myers* v. *Tranquility Irr. Dist.*, 26 Cal.App.2d 385, 387 [79 P.2d 419]); and (2) that the damages awarded against him as owner of the automobile for the imputed negligence of the driver, his son William, were excessive and against the law (Veh. Code, § 402). The record does not sustain his first point but does sustain his second; and the judgment for respondents must be modified accordingly.

Appellants and respondents are members of the same family. Appellant William, the 18-year-old son, and respondent Katie, the 20-year-old daughter, lived with their parents, Carmen Martinez, the father, and his wife in the family home. Respondent Delia is Carmen's daughter-in-law, being married to Carmen's son Cypriano, and she lived with her husband in a small house behind Carmen's home and on the same lot. For some eight months prior to the accident Katie and Delia had been working at a packing-house. Another employee regularly called for them and drove them each day to work. Each of them paid $1.00 to $1.25 per week for this service. However, some two weeks before the accident these rides ceased when this other employee quit working at the packing plant, and another means of transportation was arranged: Katie and Delia were taken to work by Carmen, William or Cypriano, whichever one happened to be available; when Cypriano took them, he used his own car, and when Carmen or William took them, Carmen's car was used.

The family lived more or less as a unit, with the working members contributing a part of their earnings each week to the general household expenses. Katie testified that she made $30 to $40 a week, of which she gave her father, Carmen, $10 to $12 a week, or more if needed, to help pay the family expenses; that during the two weeks before the accident she did not pay any more money to her father than she had previously paid; that on occasion when Cypriano drove her to work, she did buy gas; and that from time to time she had done favors for her brother William, giving him small sums and paying bills at his request, in the expectation that he would do favors for her in return. Delia testified that she never paid anything to Carmen, William, or her husband Cypriano for the rides to work, but that her husband from time to time gave his father, Carmen, certain money for household expenses—money which her husband described as paid "in place of rent." William testified that while neither Katie nor Delia paid him directly for taking them to work, he expected that for his services they in turn would do favors for him; that on the morning of the accident he had had no conversation with Carmen or the girls as to who would take them to work, but that as he was there at the time, he (William) "simply jumped in the car behind the wheel . . . and they jumped in to be taken to work."

"The designations 'passenger' and 'guest' have been adopted for the purpose of distinguishing a person who has

given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously." (*Thompson* v. *Lacey*, 42 Cal.2d 443, 444 [267 P.2d 1]; *Whitmore* v. *French*, 37 Cal.2d 744, 746 [235 P.2d 3].) Under this section one who is a guest in the automobile of another cannot recover against the driver for injuries or death unless he establishes that the injuries or death proximately resulted from the intoxication or wilful misconduct of the driver; but where one is a passenger, the driver is liable for ordinary negligence proximately causing the injuries or death. (*Follansbee* v. *Benzenberg*, 122 Cal.App.2d 466, 470 [265 P.2d 183].)

■ The burden of proving that they were passengers and not guests was upon respondents, for they made no claim that their injuries resulted from the intoxication or wilful misconduct of the driver. (*Gosselin* v. *Hawkins*, 95 Cal.App. 2d 857, 860 [214 P.2d 110]; *Whittemore* v. *Lockheed Aircraft Corp.*, 65 Cal.App.2d 737, 740 [151 P.2d 670].) Appellants do not question the finding of negligence against the driver, William Martinez.

■ "Whether a person riding with another was a passenger or a guest is to be determined on the basis of the answer to the factual question: Did the rider confer a benefit on the driver for the ride? (*Malloy* v. *Fong*, 37 Cal.2d 356, 376-378 [232 P.2d 241].) ■ It is for the trier of fact to determine whether the rider conferred a benefit or whether the ride was merely of a social nature. (. . . *Gosselin* v. *Hawkins*, 95 Cal.App.2d 857, 861 [214 P.2d 110].) Once the trier of fact has determined the fact of benefit, the province of the reviewing court is simply to examine the record to determine whether this factual finding is substantially supported." (*Follansbee* v. *Benzenberg*, *supra*, 122 Cal.App.2d 466, 471.)

In considering whether or not a benefit constitutes compensation within the meaning of the statute (Veh. Code, § 403), certain general rules have been applied. ■ Where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, compensation may be said to have been given, with the result that the rider is a passenger and the driver is liable for ordinary negligence. (*Thompson* v. *Lacey*, *supra*, 42 Cal.2d 443, 447; *Whitmore* v. *French*, *supra*, 37 Cal.2d 744, 746.) ■ But the benefit to the driver must be something more than simply the pleasure of the rider's company (*Whitechat* v. *Guyette*, 19 Cal.2d 428, 433 [122 P.2d 47]); and the

mere extension of customary courtesies of the road, such as sharing travel expenses, does not destroy the host and guest relationship if nothing more is involved than the exchange of social amenities or reciprocal hospitality. (*McCann* v. *Hoffman*, 9 Cal.2d 279, 286 [70 P.2d 909]; *Kroiss* v. *Butler*, 129 Cal.App.2d 550, 555 [277 P.2d 873].) ■ On the other hand, the benefit need not be money or its equivalent. (*Malloy* v. *Fong*, 37 Cal.2d 356, 377 [232 P.2d 241]; *Kruzie* v. *Sanders*, 23 Cal.2d 237, 241 [143 P.2d 704]; *Brandis* v. *Goldanski*, 117 Cal.App.2d 42, 45 [255 P.2d 36].) ■ However, where the inference of a tangible benefit amounting to a motivating influence rests wholly upon conjecture, it is not sufficient. (*Lyon* v. *City of Long Beach*, 92 Cal.App.2d 472, 478 [207 P.2d 73].) ■ But an anticipated or prospective profit is a benefit and may be as effectual as an immediate or direct compensation. (*Follansbee* v. *Benzenberg, supra*, 122 Cal. App.2d 466, 471.) ■ Where the trip is primarily for a business purpose rather than a social purpose, it is sufficient to show that the driver was to derive a substantial benefit from the transportation (*Kruzie* v. *Sanders, supra*, 23 Cal. 2d 237, 242); and such substantial benefit may be found if the transportation was for the mutual economic benefit of all concerned. (*Thompson* v. *Lacey, supra*, 42 Cal.2d 443, 447.) Applying the foregoing rules, we are of the view that there was sufficient evidence here to sustain the trial court's finding that respondents were passengers rather than guests, as contemplated by the statute. (Veh. Code, § 403.)

■ Manifestly, the ride culminating in respondents' injuries was not of a social nature. The trip had for its purpose the taking of wage earners to their place of work at a time when they had been deprived of their former means of transportation. Both respondents were contributing to the upkeep of the Martinez household as a family unit—Katie directly by giving a sizable portion of her weekly wages and Delia indirectly, through her husband Cypriano's payment of money to Carmen for household expenses. For the two weeks prior to the accident the automobiles of Carmen and Cypriano Martinez were used interchangeably, whichever was available, for taking the girls to work—if Carmen's car was used, he or his son William would drive; if Cypriano's car was used, then he (Cypriano) would drive. Accordingly, on the morning of the accident William was simply following the family's regular routine when he "jumped in (Carmen's) car behind the wheel . . . and they (respondents) jumped in to be taken

to work.'' While there was no express arrangement or agreement between the parties concerning the transportation, there was implicit in their conduct the common understanding that there would be a pooling of the two cars for their interchangeable use for the morning trip analogous to transportation on a share-the-ride basis. (See *Huebotter* v. *Follett*, 27 Cal.2d 765, 769 [167 P.2d 193]; *Peccolo* v. *City of Los Angeles*, 8 Cal.2d 532, 537 [66 P.2d 651].) While, as is frequently the case among members of a family, the discussion of such matters was ''sketchy'' and ''fragmentary,'' resting on an informal basis (*Fedler* v. *Hygelund*, 106 Cal. App.2d 480, 484 [235 P.2d 247]), the general situation justified the trial court's conclusion that the ride was furnished for a business purpose and for ''compensation,'' as it was furnished for the ''mutual economic benefit of all concerned.'' (*Thompson* v. *Lacey, supra,* 42 Cal.2d 443, 447.)

It may reasonably be inferred from the evidence that after termination of respondents' former arrangements with a fellow-employee for their daily ride to work, it was necessary that some other system of transportation be adopted for making the trip in order to preserve and promote the financial benefits derived and derivable by the Martinez family group from respondents' earnings. While neither respondent contributed more to the family expenses because of the added transportation service, that fact does not affect the purpose of the transportation in that it was furnished so the girls could continue to work and make their respective contributions. It may be conceded that the transportation arrangements involved a matter of accommodation and helpfulness between members of the Martinez household—a use of family cars as part of the common courtesy of family life, with one member of the family doing a service for another and expecting a favor in return. But these are only further contributing considerations in addition to the financial benefits that would accrue to Carmen and his son William in providing for respondents' transportation to work. ██ It reasonably appears from the evidence that the trip resulting in respondents' injuries was made pursuant to the family's routine arrangements; that it was not merely a matter of family courtesy or helpfulness but was made because Carmen and William, as well as the entire family as a unit, expected to receive financial benefits for the transportation furnished to respondents; and accordingly, both Carmen and William received compensation within the meaning of section 403 of the Vehicle Code.

The financial benefits expected by appellants Carmen and William may not have been the sole motivating influence in furnishing the transportation, but nevertheless the trial court was justified in finding that these expected financial benefits were "motivating influences of a substantial character." (*Thompson* v. *Lacey, supra,* 42 Cal.2d 443, 447.)

 The guest statute (Veh. Code, § 403) must be interpreted in accordance with the intent of the Legislature.

 The "primary policy" underlying the statute "is to prevent recovery for ordinary negligence by a guest in an automobile who has accepted the hospitality of the owner or driver." (*Kruzie* v. *Sanders, supra,* 23 Cal.2d 237, 242.)

 But where the evidence reasonably shows that the driver had reason to expect a substantial benefit from the transportation of the riders, the statute was not designed to bar recovery for negligence simply because the parties involved were all members of the same family. (See anno: 2 A.L.R.2d 932.) Rather, regardless of the circumstances of family relationship, the general rule should prevail that "where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence." (*Thompson* v. *Lacey, supra,* 42 Cal.2d 443, 447.) So here respondents met the burden of proof in establishing their status as passengers, where the evidence reasonably shows that the trip in question was not social but primarily a business proposition, incident to the alternate use of the family cars as available (*Peccolo* v. *City of Los Angeles, supra,* 8 Cal.2d 532, 537); and there was a direct benefit, an anticipated and prospective profit, to both appellants, Carmen the owner and William the driver, in consequence of the transportation furnished to respondents at the time of the accident. (*Follansbee* v. *Benzenberg, supra,* 122 Cal.App.2d 466, 471.)

Appellant Carmen challenges his daughter Katie's right to redress against him for her injuries, on the theory that she, 20 years old at the time of the accident, was an unemancipated minor. (67 C.J.S. § 61, p. 787; *Trudell* v. *Leatherby, supra,* 212 Cal. 678, 680; *Myers* v. *Tranquility Irr. Dist., supra,* 26 Cal.App.2d 385, 387.) Whether a minor has been emancipated depends largely on the particular circumstances of each case, and the question is ordinarily one of fact. (39 Am.Jur. § 64, p. 705.) Here it appears that Katie had

been working since she was 16 years old, giving part of her earnings to her father Carmen in helping to defray the family household expenses. Her contribution for some months prior to the accident had been $10 to $12 weekly, or more if needed. Apparently, while then still living at home, she did not occupy a subordinate position in the family unit but was controlling her own earnings and was contributing her share of family expense in the same manner as an adult member of the group. Under such circumstances it could reasonably be inferred from the evidence, as the trial court concluded, that respondent Katie was "probably, in fact, emancipated" (see anno.: 165 A.L.R. 723).

However, the liability of Carmen as the owner who consented to the use of his automobile by his son William was limited by section 402 of the Vehicle Code to $5,000 for the injury to each of respondents and to $10,000 for the injuries to both, in the absence of the relationship of principal and agent or master and servant. (7 Cal.Jur.2d, § 306, pp. 177 et seq.) Here respondents' complaint alleged no such relationship but merely charged that Carmen's automobile "was at the time and place of the accident . . . being driven and operated with [his] consent, permission and authority . . . by . . . William." Moreover, during the trial one of respondents' counsel expressly admitted that there was no contention of agency in the case. It is therefore clear that Carmen's liability as owner for the imputed negligence of the driver William cannot exceed the statutory limit, and that the respective damage awards against him must be reduced accordingly. (*Peccolo* v. *City of Los Angeles, supra,* 8 Cal.2d 532. 538-539; *Rogers* v. *Foppiano,* 23 Cal.App.2d 87, 92-93 [72 P.2d 239]; *Milburn* v. *Foster,* 8 Cal.App.2d 478, 480-481 [47 P.2d 1106].) In modifying the judgment to provide for such reduction, it appears appropriate to recast the provisions of the judgment in the form indicated in *O'Neill* v. *Williams,* 127 Cal.App. 385 [15 P.2d 879].

Paragraphs one and two of the judgment are modified so as to read as follows:

"1. That plaintiff Katie Martinez do have and recover from defendant William Lopez Martinez the sum of $5,961.00, and from defendant Carmen R. Martinez the sum of $5,000, with interest thereon at the rate of 7% per annum from the date hereof until paid; provided, however, that no more shall be collected by plaintiff Katie Martinez from said defendants than an amount equal to that awarded against defendant William

Lopez Martinez, the liability of defendant Carmen R. Martinez being that imposed upon said Carmen R. Martinez as owner under the provisions of section 402 of the Vehicle Code.

''2. That plaintiff Delia C. Martinez do have and recover from defendant William Lopez Martinez the sum of $5,281.50, and from defendant Carmen R. Martinez the sum of $5,000, with interest thereon at the rate of 7% per annum from the date hereof until paid; provided, however, that no more shall be collected by plaintiff Delia C. Martinez from said defendants than an amount equal to that awarded against defendant William Lopez Martinez, the liability of defendant Carmen R. Martinez being that imposed upon said Carmen R. Martinez as owner under the provisions of section 402 of the Vehicle Code.''

As so modified the judgment is affirmed, respondents to recover their costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellants' petition for a rehearing was denied November 9, 1955.