[Civ. No. 21728.   Second Dist., Div. One.   Sept. 5, 1956.]

STUART HART, a Minor, etc., et al., Appellants, v. MARION B. CHAFFIN, JR., et al., Respondents.

George Cohn for Appellants.

Parker, Stanbury, Reese and McGee and William C. Wetherbee for Respondents.

NOURSE (Paul), J. pro tem.*—Appellants are plaintiffs in an action for personal injuries in which respondents were the defendants. They appeal from a judgment in favor of defendants entered on a verdict by a jury.

The facts, insofar as they are relevant to the points raised by the appellants in their briefs, are:

The respondent Marion Buford Chaffin (hereinafter called Buford), a minor of the age of 16 years, was operating an automobile owned by his father, respondent Marion Bartlett Chaffin, on February 7, 1954, when it was involved in an accident in which the appellants who were riding with him were injured. The accident occurred when the automobile driven by Buford crossed the center line of the highway on which it was traveling and collided with a car traveling in

*Assigned by Chairman of Judicial Council.

the opposite direction. There was evidence to show that Buford intentionally turned to his left side of the road in order to pass a car and was unable to get back onto his right side of the highway in time to avoid the collision. On the other hand, there was evidence that the car went out of control and skidded across the center of the road despite the efforts of Buford, and that after the accident the U-bolt which held the right rear spring to the rear axle had broken, thus dropping the right-hand side of the car.

Approximately a week before the accident in question Buford had agreed with the teacher of his Sunday school class to go to Big Bear Lake for the purpose of renting a cabin to be used by the Sunday school class on an excursion which was to be taken at a later date. While at school during the week following his agreement with the Sunday school teacher, he told the plaintiffs and a third schoolmate, one Harold Garrison, of his intended trip to Big Bear Lake and they expressed a desire to go along. There was a direct conflict in the evidence given on the one hand by the plaintiffs Stuart Hart and Arthur Archuleta and that given by Buford as to what occurred at the time of the arranging of the trip among the parties. Plaintiff Hart testified, "Arch [Archuleta] and I were talking about there was a lot of snow in the mountains and we'd like to go, and Buford said he had to go up to the mountains this week end, and he said he would take us up for a dollar a piece. . . . We said it sounded O.K. to us, and that was all." He further testified that there was nothing said about a tank of gas or his or Archuleta's paying for part of the gas; and further that at the time he entered the car on the morning of February 7 Buford asked for his money and he paid him a dollar.

Archuleta testified as follows: "Well, Buford was telling us that he was going to the mountains to get a cabin for his Sunday school class, and he asked us if we'd like to go, and we said, 'Yes.' He said he'd take us up there for a dollar a piece . . . we said it would be a lot of fun because of the snow and everything." He further testified that nothing was said about gas, and that on the morning of the 7th before the start of the trip to Big Bear, Buford asked him for the money and that he then paid him 95 cents which, Buford said would be all right.

Buford testified as follows: "There had been some talk around the 3-day holiday coming up. It was a 3-day week end. And I figured that being as I was going up for the

Sunday school, that a bunch of us could get together and go up, and so forth. And Archie and Harold Garrison were among those I asked. . . . It was mentioned that how much would it cost to go up there, and I said it would be—— take about a tank of gas, which usually runs around $3. $3.45 is what it really came to. And they said, 'Well, then, chip in about a dollar a piece would be O.K., wouldn't it?' And I said, 'Yes, it would.' '' He further testified that Garrison was to pay a dollar if he wished to, but that he did not have any conversation with Garrison about paying a dollar for the trip; that before Archuleta got into the car on the morning of the trip he handed Buford some change saying ''Here's my share''; that after they had started on the trip, plaintiff Hart gave him a dollar, saying ''Here's my share.'' Garrison did not pay Buford any money but did pay for Buford's breakfast after they got to Big Bear.

Neither Hart, Archuleta, nor Garrison were members of Buford's Sunday school class, and they had no interest whatsoever in the service he was to perform in accordance with his arrangement with his Sunday school teacher.

Appellants make four assignments of error, which we will treat in the order in which they are set forth in their brief.

■ Appellants first urge that the court erred in refusing to instruct the jury that plaintiffs were passengers of the defendant Buford and that the defendant owed to them the duty to exercise ordinary care. This contention cannot be sustained. The trip, as far as the plaintiffs were concerned, was purely a social one. They had no interest in the business to be conducted by the defendant for the benefit of his Sunday school class. The question, therefore, as to whether the small amounts contributed by plaintiffs to the cost of the trip were paid by them as a consideration or compensation for their transportation to and from Big Bear, or were mere incidents to the social aspects of the trip and in the nature of ''the exchange of social amenities or reciprocal hospitality'' was a question of fact to be determined by the jury (*Whitechat* v. *Guyette,* 19 Cal.2d 428 [122 P.2d 47]).

Appellants rely upon the cases of *Whitmore* v. *French,* 37 Cal.2d 744 [235 P.2d 3], and *Harris* v. *Harfmann,* 113 Cal.App.2d 615 [248 P.2d 501], to support this contention. The second case cited is clearly distinguishable upon its facts, for there the plaintiff had, in consideration of an agreement to transport her and her two children from California to Okla-

homa, agreed to pay all expenses for gasoline and oil consumed upon the trip.

While there is language used by the Supreme Court in *Whitmore* v. *French* and again in *Martinez* v. *Southern Pac. Co.*, 45 Cal.2d 244 [288 P.2d 868], which, taken from its context, gives color to plaintiffs' contention, we do not believe that it was the intent of the Supreme Court to hold that any contribution made by one accepting the hospitality of another on a trip to be made for their mutual pleasure makes him a passenger rather than a guest, for such holding would in effect repeal or render practically ineffective section 402 of the Vehicle Code and would amount to judicial legislation; and we must assume that the Supreme Court did not so intend.

The amounts paid by the plaintiffs here were trivial, and did not represent any substantial portion of the real cost of driving an automobile from Long Beach to Big Bear Lake and return; and while the triviality of the amount paid, if it was paid as compensation for the plaintiffs' transportation, would not affect their right to the exercise of ordinary care by the defendant, yet it is a fact that the triers of the fact might take into consideration in determining whether it was in fact paid as compensation or was merely a voluntary contribution made by a guest in recognition of his social responsibility. It was therefore for the jury to determine whether the tangible benefit received by the defendant in the form of the contributions made by plaintiffs was given and received by him as compensation for the furnishing of transportation, or whether, on the other hand, the mutual pleasure of the parties was the moving influence for the transportation and the contribution "merely incidental thereto." (*McCann* v. *Hoffman*, 9 Cal.2d 279, 286 [70 P.2d 909].)

The court, at defendants' request, instructed the jury in accordance with B.A.J.I. 209. Appellants assert that this instruction is erroneous. In so doing, they separate from its context one paragraph of the instruction, and one phrase of another paragraph. ■ The first paragraph that they attack as erroneous reads:

"Where, however, the driver receives some compensation which is the chief inducement for the rider's transportation, and which is given and received as compensation, and as a business transaction, such a rider is a passenger, not a guest."

That this is a correct statement of law cannot be denied, for certainly under the hypothetical facts stated in the paragraph, the rider would not be a guest. The paragraph does

not state, nor is the instruction as a whole subject to the interpretation which appellants place upon it; that is, that the compensation must be given in the course of a business transaction in order that a rider may be a passenger rather than a guest.

The second portion of the instruction complained of constitutes one clause of a sentence in the seventh paragraph of the instructions. The entire paragraph, in which we have italicized the clause complained of, reads as follows:

"However, the mere sharing of expenses of a motor trip, such as for gasoline and oil, does not, in and of itself, cause the rider, who pays part of such expenses, to be a passenger rather than a guest. *If such a contribution is the motivating influence for furnishing the transportation,* if the arrangement has the character of a business transaction, then the payment is compensation for the ride, and one who thus rides and pays is a passenger; but if the purpose of the trip is merely the joint pleasure of the participants, if that objective is what led to the trip as a social occasion, and the sharing of expenses is merely incidental, then one who thus rides with the driver, although sharing in the expense, is a guest."

It is appellants' contention that the court should have used the article *a* instead of the article *the* in modifying words *motivating influence,* and seemingly contends that by the use of the article *the* the instruction is given the meaning of "the sole motivating influence." We do not believe that the instruction is subject to that interpretation, but that the italicized portion of the instruction was so phrased in order to distinguish between the contribution as a motivating influence and thus compensation rather than as a mere incident to the joint pleasure of the participants as the motivating influence. Certainly the jury could not have understood the instruction otherwise, for immediately following instruction 209 the court instructed the jury as follows:

"If the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the riders are passengers and the driver is liable for ordinary negligence and this is true whether the trip was a social trip for the joint pleasure of the participants or of a non-social nature."

The two instructions are not in conflict, for when read together their meaning is plain, and simply this: That if the joint pleasure of the participants was the motivating influence for the trip, the fact that the participants shared the expense

did not make their contribution compensation so as to render the rider a passenger rather than a guest; but that if the contribution alone was, or the contribution and the joint pleasure of the participants were each a motivating influence, then the contribution did constitute compensation for the transportation of the rider and he is thus entitled to the exercise of ordinary care by the driver.

Appellants next complain of the instruction given by the court on the subject of ''latent defect.'' Appellants do not challenge the instruction given as a correct statement of the law, but contend that there was no evidence to which it was applicable. We think however, that there was evidence from which the jury could find that the accident was due to the defect in the right rear spring assembly and that this defect was not one known to defendants or which in the exercise of ordinary care could have been discovered by them.

Respondent Buford testified that he did not turn the car to the left, but that it suddenly went out of control and slid or skidded to the left, and that he was unable to turn it back to his right side of the road; that just prior to the accident he was traveling at a speed of between 35 and 45 miles per hour, following another car at a distance of four or five car lengths, which was traveling at about the same speed; that he did not attempt to pass the car in front of him; that his car went out of control and crossed the center line, and felt the same as when one has a blowout; that he turned the wheel and put on the brakes trying to get back out of the way, but had no control over the car. His father testified that after the accident he examined the car that had been driven by Buford and found the condition in the rear spring to which we have heretofore adverted. We think this evidence sufficient foundation for the jury to determine that the car did go out of control and that it was caused to go out of control by the breaking of the U-bolt of the rear spring, and that the weakness of that bolt was not something that could have been discovered by the defendants in the exercise of reasonable care nor something that should have been anticipated by them.

Appellants' fourth and last contention is that the court erred in refusing instructions requested by them. Under this blanket assignment of error they first call attention to an instruction requested by them and refused by the court on the issue of contributory negligence, and which would

have instructed the jury not to consider that issue. This contention is totally devoid of merit. There is no showing in the record that the jury were ever advised that a defense of contributory negligence had been pleaded by the defendants in their answer, or that contributory negligence had ever been an issue. On the contrary, the court specifically instructed the jury that if they found plaintiffs to be passengers in the car and found that negligent conduct on the part of Buford was a proximate cause of injury to either plaintiff, then plaintiffs were entitled to recover. It was not necessary for the court to give a negative instruction on the issue of contributory negligence when it had defined the issues as to liability and limited them to negligence on the part of the defendant. The remainder of the instructions, the refusal of which appellants claim as error, all concern the guest or passenger status of the plaintiffs and are fully covered by the instructions given by the court.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 24, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 31, 1956.