[Civ. No. 6953. Fourth Dist. June 25, 1963.]

CARL B. QUICKSALL, Plaintiff and Respondent, v. GEORGIE S. LEVY, as Executrix, etc. Defendant and Appellant.

Schall, Nielsen & Boudreau and Leland C. Nielsen for Defendant and Appellant.

Harelson, Enright, von Kalinowski & Levitt and Gordon E. von Kalinowski for Plaintiff and Respondent.

BROWN (Gerald), J.—█ The only issue presented to us on appeal concerns claimed error of the trial court in the content of an instruction given to the jury on the guest versus passenger relationship, and in refusing an instruction submitted by the appellant upon this subject.

Quicksall was injured in a one-car accident while riding in a car owned and driven by Rueben Levy. The two men were returning from a dove hunt in the Imperial Valley; they had been hunting and fishing companions for almost 40 years; since 1944 they had hunted deer and elk almost every year in California, Idaho and Utah. Their last fishing trip was a week-long trip to the High Sierras about six weeks before the accident; they were accompanied by at least two other fishermen and used Quicksall's station wagon as was customary on long trips. On these long trips, money was usually put into a "pot" and expenses paid therefrom.

Quicksall and Levy had made short trips to the Imperial Valley for dove at least twice a year for the previous eight years. On these short trips, it was customary to alternate automobiles. The driver would start with a full tank of gas, and often eat breakfast at the house of one of the other hunters. Meals of the driver, gas, if required, and other like expenses were paid by the other hunters.

All birds or animals killed were always divided equally among all hunters. The large game was cut up and the pieces divided among all hunters, including those who shot no game, each sharing good meat as well as meat which was damaged by the kill.

On the trip that resulted in Quicksall's injury and Levy's death, Levy was driving his car, since Quicksall had taken his station wagon on the fishing trip to the High Sierras.

The following is a portion of an instruction given to the jury and repeated when they returned with a specific question on the guest versus passenger relationship:

"Where, however, the driver receives a tangible benefit, monetary or otherwise, which is *a* motivating influence for furnishing the rider's transportation, the rider is a passenger, not a guest.

"The compensation required to make a person a passenger, rather than a guest, need not be in money and need not be paid directly by such person. If, as *a* chief inducement for the transportation, any benefit is conferred on the driver which has a then present pecuniary value although that value may never ripen into material gain, the person transported is a passenger, not a guest. One who thus rides and pays or agrees to pay is a passenger." (Italics ours.)

The following instruction submitted by the appellant was refused by the court as either covered or argumentative:

"However, the mere sharing of expenses of a motor trip, such as for gasoline and oil, does not, in and of itself, cause the rider, who pays part of such expense, to be a passenger, rather than a guest. If such a contribution is *the* motivating influence for furnishing the transportation, if the arrangement has the character of a business transaction, then the payment is compensation for the ride, and one who thus rides and pays is a passenger; but if the purpose of the trip is merely the joint pleasure of the participants, if that objective is what led to the trip as a social occasion, then the sharing of expenses is merely incidental, and one who thus rides with the driver, although sharing in the expense, is a guest.

"Where, however, the driver receives a tangible benefit, monetary or otherwise, which is *the* motivating influence for furnishing the rider's transportation, the rider is a passenger, not a guest." (Italics ours.)

Both instructions, that given and the one refused, are taken from or based upon BAJI No. 209.

Appellant contends that the court erroneously instructed the jury by using the indefinite article "a" in the phrases, "a motivating influence," and "a chief inducement," rather than the definite article "the" in the same phrases. In *Gillespie* v. *Rawlings*, 49 Cal.2d 359, 364 [317 P.2d 601], the court observed that some cases have used "the" in conjunction with the phrase "motivating influence," while others have used "a." The court reconciled these two lines of cases as follows:

"The cases which use the phrase 'a motivating influence' and those which use the phrase 'the motivating influence' do not, because of this difference in phraseology, state different principles. The thought conveyed by both groups of cases is that the tangible benefit, not mere pleasure, kindness, or friendship alone, must be the principal inducement for the ride to constitute compensation. . . . The District Court of Appeal in the *Baker* case says further, 'We find nothing in *McCann* v. *Hoffman*, 9 Cal.2d 279 [70 P.2d 909], in conflict, as to this point, with *Whitmore* v. *French*, 37 Cal.2d 744 [235 P.2d 3], or *Thompson* v. *Lacey*, 42 Cal.2d 443 [267 P.2d 1], or *Martinez* v. *Southern Pac. Co.*, 45 Cal.2d 244 [288 P.2d 868]. Where the context calls for the demonstrative and particular article 'the' that word is used. When, however, the court is directing its attention variously to one of several motives influencing conduct it uses the indefinite article 'a.' "

It cannot be said that there was necessarily but one motive of value influencing conduct in the relationship of Quicksall and Levy which had evolved over 40 years. We must be mindful not only of the fatal trip, but of previous benefits from past trips, and any reciprocation therefor, as well as expectations of benefits in future trips. To say that the sharing of expenses alone was *the* motivating influence ignores other benefits which may have been just as motivating. For example, the jury might well have considered that the alternating of automobiles or the sharing of game were motivating influences. Thus in properly recognizing that there may have been several motivating influences in their relationship the court should and did use the indefinite article in its instruction.

Having chosen correctly the instruction embodying the indefinite article the court properly refused the instruction containing the definite article submitted by defendant.

Had defendant's requested instruction contained the indefinite article the court may have been correct when it refused the instruction as argumentative in that it disproportionately emphasized one of the several possible motivating influences, namely, the sharing of incidental expenses. In view of the fact that the instruction was properly refused on other grounds we need not decide this point.

Judgment affirmed.

Griffin, P. J., and Coughlin, J., concurred.