[Civ. No. 25212.   Second Dist., Div. One.   July 19, 1961.]

THEODORE J. SCHIFFMAN, as Executor, etc., Appellant, v. ATLAS MILL SUPPLY INCORPORATED (a Corporation) et al., Respondents.

Irmas & Rutter and Sidney M. Irmas, Jr., for Appellant.

George Sokol for Respondent.

LILLIE, J.—Plaintiff, executor of the estate of Bertha Schiffman, deceased, filed suit on a $4,000 promissory note executed October 31, 1955, by defendant corporation to Bertha. Defendant admitted execution and delivery of the note, receipt of the money, and that it was never repaid; but asserted, and the trial court so found, that Bertha's conduct on or about

January 27, 1956, and thereafter prior to her death, "amounted to an executed oral agreement that the debt and obligation was forgiven, and deemed paid and satisfied." (Findings of Fact, p. 6.) Judgment was entered in favor of defendant; plaintiff appeals. He contends that Bertha's oral agreement to forgive the debt was without valid consideration and unenforceable.

In 1955, Myles, Bertha's brother, was president of defendant Atlas Mill Supply Inc., which appears to have been a family corporation in which members of the Schiffman family held stock or were officers, and to which they loaned money. Myles was owner of the majority of the outstanding corporate stock; Esther, Myles' wife, was also an officer; they had loaned the corporation over $80,000; Bertha loaned it $4,000 and plaintiff, Ted, another brother and herein executor of his sister's estate, had also loaned it funds. The $4,000 loaned by Bertha was evidenced by a promissory note dated October 31, 1955, payable on demand. Thereafter, in November 1955, due to business and financial reverses, Myles suffered a nervous breakdown and was taken to a sanitarium. Esther began efforts on behalf of Myles to negotiate a sale of the stock of the corporation to third persons. During this time, plaintiff talked to her "a lot" about selling the corporation and "tried to negotiate for a sale of the business for her." Between November 1955, and January 27, 1956, Esther, plaintiff, Bertha, Ida and the "whole family" were "trying to see how they could salvage" the business and "get out of this as clean as they can, as quick as they can." Bertha was in Esther's home daily and they had numerous discussions concerning a sale of the corporation, especially during December 1955. Esther told Bertha that in order to effect a sale it would be necessary to cancel all of the corporation's debts to the family and that Mr. Silver and Mr. Goldman, prospective purchasers, would not even discuss buying the business "until we would forgive all of the notes payable to the officers and family." Bertha told Esther, "If you can lose close to $100,000 then I can certainly take a loss and forgive the $4,000 note so that my brother can get well." On the morning of January 27, 1956, the day the agreement for the sale (Exhibit A) of defendant corporation to Silver and Goldman was signed by Myles at the sanitarium, Esther showed the agreement to Bertha and discussed it with her; she pointed out to Bertha that she and Myles were taking about an $86,000 loss; Bertha told her if they could do that, "the least she could do was to forgive the

$4,000 note.'' It is not too clear from the evidence who among the family had loaned money to the corporation, but it is clear that it was indebted to Myles and Esther for ''over $86,000'' and to Bertha for $4,000, and that plaintiff had ''loaned money to Atlas''; it is also apparent that before Silver and Goldman would negotiate a sale of the stock the indebtedness from the corporation to members of the family had to be cancelled because ''that was the biggest thing against the sale.'' Thus in the agreement of sale (Exhibit A) Myles, the principal stockholder had to, and did, represent and warrant to the buyers a specific amount of the corporation accounts payable (Schedule A), not to exceed a certain sum, which listed neither Bertha's claim nor the claim of any other member of the family. In reliance thereon, the agreement was executed January 27, 1956, and the sale was effected; from that day to the present Mr. Silver has been president of defendant corporation.

In the latter part of 1955 plaintiff went to Goldman's office to find out their interest in purchasing the corporation; around January 27, 1956, he went to the office of attorney Goldman where details of the sale of the corporation were reviewed and there was a discussion regarding items listed in Schedule A of the agreement (Exhibit A). Bertha, having seen the agreement of sale prior to its execution, also knew of the warranty and representation Myles, representing the corporation, had made in Schedule A, which listed neither her $4,000 note nor any other family account payable. At no time from October 31, 1955, to her death, three years later in December, 1958, did Bertha ever make demand upon Esther, Myles or defendant corporation for payment of the note; Bertha continued to see Esther and Myles, who was released from the sanitarium in February 1956, in their home until she died but never mentioned the $4,000, although in February 1956, she told Esther she would take the note as a loss on her tax return; Bertha also told her accountant she had ''forgiven the note to Atlas Mill''; and represented the note as a loss in the declaration of her Federal Income Tax Return for 1955.

Appellant's contention that there was no renunciation of the note requires little discussion for the evidence is clear that Bertha neither renounced her rights under the note in writing nor delivered up the note to defendant corporation (Civ. Code § 3203), respondent has never contended there was a renunciation and the trial court found ''there was an executed oral agreement not a renunciation.''

Appellant's main argument for reversal is that an oral agreement to discharge a note must be supported by valid consideration to be enforceable, and that the only consideration was Bertha's love and affection for her brother.

Contrary to respondent's contention that the matter of consideration for the oral agreement was not before the trial court, the record shows that, while the pretrial order neither mentioned nor contemplated such an issue, the matter of consideration was not only raised at the trial but by evidence offered by respondent, and that the case was tried and disposed of with this matter in mind; in fact, consideration was specifically mentioned in Findings of Fact (p. 5), which we assume were prepared by respondent, the document bearing the name of George Sokol, its attorney. Respondent's conduct in this connection hardly places it in any position to now complain that the matter was not considered by the trial court and was not an issue that "survived the pretrial conference." (*Lund* v. *Utter-McKinley Mortuaries*, 186 Cal.App.2d 162, 169 [8 Cal. Rptr. 685].)

However, on a different ground, we agree with respondent that the issue of consideration is not material to a determination of the within cause, inasmuch as the evidence clearly established that the oral agreement to forgive the debt was completely and fully executed by the parties on or about January 27, 1956—at that time Bertha relinquished her rights under the note in consideration that other family creditors would do the same and Myles, the principal stockholder, would so warrant to the buyers of the stock, and on the same day this became an accomplished fact and the stock was sold; that the obligation due Bertha was thus then extinguished and considered by all to have been, in effect, paid and satisfied—at least no longer due and owing to her; that after January 27, 1956, the relations of Bertha and Myles and defendant corporation were governed by the oral agreement and nothing further remained of the agreement to be executed. There is now no question of enforceability, the object of the agreement having long before Bertha's death been fully accomplished.

An executed agreement is one the object or terms of which have been fully performed. (Civ. Code, § 1661; *Henehan* v. *Hart*, 127 Cal. 656 [60 P. 426] ; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25].) Motivated by her desire for her brother's recovery, but obviously for the purpose of facilitating the sale of the corporation to which members of the family

had loaned money and which the whole family was trying to salvage, Bertha orally forgave the $4,000 debt it owed her with the understanding that other members of the family had agreed to do the same and the only way the corporation could be sold was for the family creditors to forgive the corporation debts. Myles and Esther, upon execution of the sale agreement January 27, 1956, did cancel the corporation's indebtedness to them of "over $80,000"; apparently plaintiff did the same for neither his nor any family obligation was listed in Schedule A. On January 27, 1956, relying on the cancellation of the family obligations, Myles did represent and warrant to Silver and Goldman the corporation accounts payable in a certain sum which did not include the family obligations; and in reliance thereon, and on that day, the buyers did enter into the agreement of sale, did take over the corporation and have since operated the business.

Bertha's intent to forgive the debt and that she actually did so on January 27, 1956, forever after terminating the obligation, is manifest in the evidence of Bertha's conduct. She knew for at least a month prior to the sale of the stock that all family obligations had to be forgiven if the stock was to be sold and she agreed to forgive the $4,000 debt; on January 27, 1956, the day of the sale, but before the agreement was signed, she saw the document, discussed the sale with Esther and was told that they had cancelled their $86,000 obligation, and at the time Bertha forgave the $4,000 debt; and shortly thereafter, on the same day, the sale was made. That this was the end of the obligation as far as Bertha was concerned is reflected in the evidence of how she thereafter treated it. She knew that Schedule A did not list her note as a corporate obligation; she at no time up to her death ever mentioned the debt except that one month after the sale she told Esther she would take the note as a loss on her tax return and her accountant that "she had forgiven the note to Atlas Mill"; she did represent the note as a loss on her 1955 Federal Income Tax Return; and although the note was a demand note she at no time ever made demand upon Esther, Myles or the corporation for its payment. The evidence is clear that ever after January 27, 1956, the relations of Bertha, Myles and defendant corporation were governed by the oral agreement. The finding that Bertha's conduct on or about January 27, 1956, and thereafter prior to her death, "amounted to an executed oral agreement that the debt and obligation was forgiven, and deemed paid and satisfied" (Findings of Fact,

p. 6) is adequately supported by the ample evidence in the record before us.

■ Consideration applies to the executory contract; after the contract is fully executed on both sides it becomes a closed incident and the question of consideration becomes immaterial. "Where the agreement has been fully executed, the item of consideration seems clearly to be a false quantity." (*Julian* v. *Gold*, 214 Cal. 74, 76 [3 P.2d 1009].) In the Julian case a landlord, without consideration, orally agreed with his tenant to take a lesser sum for monthly rental than that set up in the written lease; he accepted the reduced payments for two years and then sued to recover the difference in rent for the two years past. The court denied recovery on the ground that the oral agreement had already been executed, and at page 76 stated that "[the] rule is that an executed oral agreement will serve as a modification or release of a written agreement and this [is] without regard to the presence or absence of a consideration. (*Treadwell* v. *Nickel,* 194 Cal. 243 [228 P. 25] ; *Bennett* v. *Potter,* 180 Cal. 736 [183 P. 156] ; *Molera* v. *Cooper,* 173 Cal. 259 [160 P. 231].)" To the same effect is *Stoltenberg* v. *Harveston,* 1 Cal.2d 264 [34 P.2d 472], and *Kennedy* v. *Moyer,* 5 Cal.App.2d 29 [42 P.2d 352]. ■ "Any arrangement mutually agreeable to both parties to a valid contract which has been wholly executed to their mutual satisfaction leaves no question of consideration for adjudication." (*Fox Chicago Realty Corporation* v. *Zukor's Dresses, Inc.,* 50 Cal.App.2d 129, 136 [122 P.2d 705].)

Inasmuch as the oral agreement was fully executed long before Bertha's death we find no need to discuss what constitutes valid consideration; nor do we deem it necessary to consider the issue of estoppel.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.