[Civ. No. 20933. First Dist., Div. One. Mar. 28, 1963.]

HILL & MORTON, INC., Plaintiff and Respondent, v. J. M. COUGHLAN, Defendant and Appellant.

Hy Schwartz for Defendant and Appellant.

Eugene K. Lawlor for Plaintiff and Respondent.

BRAY, P. J.—Defendant Coughlan, one of three defendants against whom judgment was rendered, appeals from said judgment. The other defendants have not appealed.

### QUESTION PRESENTED

Was the agreement between Hill and North materially altered, thus exonerating Coughlan?

### RECORD

October 31, 1956, plaintiff, a wholesale lumber dealer in

Oakland, entered into a written agreement with defendant North Lumber, Inc. (hereinafter referred to as North), a retail lumber dealer in San Diego, defendant Sam Cohen individually and as president of North, and defendant Coughlan individually and as secretary of North, by which plaintiff agreed to supply North with lumber, subject to a maximum limit of lumber shipped and unpaid for at any one time in the sum of $20,000. ''[A] method of payment'' was that North would invoice all its customers for lumber supplied to them, supplying plaintiff with copies of the invoices. Each invoice would bear a notation that it was assigned to plaintiff and that payment was to be made to plaintiff. Plaintiff reserved the right to reject any assigned account and return it to North. In the event that the invoices contained items other than lumber, plaintiff was to retain only the payments for lumber and transmit the balance to North. Defendants Cohen and Coughlan, individually and jointly guaranteed faithful performance of the agreement by North, waiving demand on North and notice of nonperformance by North. The agreement was to continue in force until cancelled, plaintiff having the right to cancel at any time. A chattel mortgage on certain North property, subsequently executed, was provided as additional security.

The agreement was put in operation in the fall of 1956. In October or November 1957 defendant Coughlan resigned from North and became completely disassociated with the management or direction of its affairs. In April 1958 plaintiff decided that the method of handling the North account was too cumbersome. Mashek, plaintiff's president, testified that he entered into an oral agreement with Cohen to change from assignment procedure to a simple open book account. Cohen agreed to pay for the lumber shipments within 30 days and agreed that the guaranty arrangements and chattel mortgage would be retained by plaintiff. Cohen denied making this arrangement, but did not protest when the payment procedure was changed. Defendant Coughlan had no knowledge of the new arrangement.

After April 1958 the account was frequently delinquent. From time to time plaintiff agreed to accept and accepted postdated checks, but no other express agreement extending time of payment of invoices was ever made. Cohen testified that the postdated checks were given as payment for invoices more than 30 days old. Mashek's testimony, while vague, is to the same effect. Thus, when invoice payments were over-

due, plaintiff would accept postdated checks. In early 1959, a group of these checks, totaling $27,000, was dishonored.

As of May 1, 1959, North owed plaintiff $70,571.83. June 1, 1959, plaintiff brought this action to foreclose the chattel mortgage and to enforce the guaranties of payment by Cohen and Coughlan. The court gave plaintiff judgment against North for $70,571.83 plus interest from May 1, 1959, and $2,500 attorneys' fees, and ordered the chattel mortgage foreclosed. It further decreed that plaintiff should recover from Cohen and Coughlan, jointly and severally, any deficiency not exceeding the $20,000 limit set in the agreement, that might result upon sale or foreclosure.

The trial court found as to the *fact* of the change of method of payment from that mentioned in the contract and found that plaintiff had accepted postdated checks. However, it further found that Hill and North at no time entered into an agreement different from that set forth in the contract. This determination, as will hereinafter appear, was based upon the court's construction of the contract as not limiting the method of payment.

## The Agreement Was Materially Altered

The obligation sued on, guaranteeing faithful performance, is in actuality a guaranty of payment (see *Somers* v. *United States F. & G. Co.* (1923) 191 Cal. 542 [217 P. 746]) and as relating to future liabilities of the principal, North, under successive transactions, it is a contract of continuing guaranty. (See *Berg Metals Corp.* v. *Wilson* (1959) 170 Cal. App.2d 559, 568, 569 [339 P.2d 869].) There is no distinction between sureties and guarantors; a continuing guaranty is a form of suretyship obligation and is subject to all provisions of law relating to suretyship. (Civ. Code, § 2787.)

Section 2819, Civil Code, provides: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

Defendant contends he was exonerated (1) because the contract between plaintiff and North was altered in a material respect without his consent, and (2) because plaintiff extended North's time of payment. An alteration in any material respect without consent of the surety exonerates the

surety. "Where a contract and a guaranty of performance thereunder are entered into at the same time, they are properly read and interpreted as an entire contract. Where the main contract is altered without the consent of the guarantor and in respects so material as to change the substantial rights of the parties thereto and in effect to make a new contract, the guarantor is exonerated. (Civ. Code, § 2819.) This is true whether the effect of the alteration is to increase or to lessen the obligation, performance of which is guaranteed." (*Boteler* v. *Conway* (1936) 13 Cal.App.2d 79, 82 [56 P.2d 587].) "The materiality of the change, however, does not depend upon whether or not the party not consenting thereto will be benefited or injured by the change, but rather upon whether or not the change works any alteration in the meaning or legal effect of the contract. (*Turner* v. *Billagram*, 2 Cal. 520; *Humphreys* v. *Crane*, 5 Cal. 173.) A material alteration is one that works some change in the rights, interests, or obligations of the parties to the writing." (*Lasky* v. *Bew* (1913) 22 Cal.App. 393, 396 [134 P. 358].)

 Tested by the above rules it is clear that the contract was materially changed when the method of payment provided by the contract was changed from assignment of the invoices to plaintiff to that of an open account on plaintiff's books. Mashek, plaintiff's president, characterized the change, "We wanted to discontinue the account because it was too cumbersome, and then Cohen [North's president] came up and we made *another deal*." (Italics added.) While the term "invoice" is not a technical one and does not have a single settled meaning (*Peskin* v. *Squires* (1957) 156 Cal.App.2d 240, 248 [319 P.2d 405]) it definitely appears from the original contract that the parties intended the transfer of the invoice to be an assignment by North to plaintiff of contractual rights which North had against the purchasers of lumber. The agreement specifically provides that the invoice is to bear a notation that it is "assigned" to plaintiff, and the invoicee is required to pay plaintiff directly. By plaintiff's releasing its rights against North's buyers and substituting an open book account whereby plaintiff's only rights were against North, the agreement was materially altered. The court found that the change was effected without Coughlan's knowledge, so obviously it was without his consent. Plaintiff does not contend otherwise, except that it contends that the contract did not provide that the invoice assignment was the only method of payment to be followed. The trial

court, in effect, so found.[1] The exact language of the contract is, "the following shall be *a method of payment* to which Hill & Morton [plaintiff] agrees: . . ." (Italics added.) From this language plaintiff contends that implicit in the agreement was plaintiff's right to make changes in method of payment without consulting Coughlan. Moreover, Mashek testified that when they found the invoice assignment method "too cumbersome," "we wanted to discontinue the sales on the basis that we had been doing them, *and we did discontinue them.*" (Italics added.) This statement, plus Mashek's statement that when Cohen thereafter came, they made another deal, indicates that Mashek considered the written contract as providing for only one method of payment. Although the agreement used the word "a," it is clear from an examination of the entire contract that "the" method of payment to which the parties agreed was the assignment method. If plaintiff desired to provide for other methods of payment, it could have explicitly provided for that in the agreement. The agreement is not ambiguous in this respect.

The oral agreement having been executed, the surety was discharged. (Cf. *Watterson* v. *Owens River Canal Co.* (1914) 25 Cal.App. 247, 252-253 [143 P. 90]; *Schiffman* v. *Atlas Mill Supply, Inc.* (1961) 193 Cal.App.2d 847, 853 [14 Cal.Rptr. 708].) As the alteration was a material one effected without the knowledge or consent of the surety Coughlan, he was thereby exonerated.

In view of our determination that the agreement was materially altered by the change of method of payment, it becomes unnecessary to determine whether the acceptance of postdated checks constituted such an extension of payment as to exonerate defendant Coughlan.

The judgment is reversed.

Sullivan, J., and Molinari, J., concurred.

---

[1]As there was no testimony concerning the intention of the parties as to the meaning of the "a method of payment" clause, and as the construction of the contract is a question of law, this court is not bound by the trial court's construction. (See *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 381 [267 P.2d 257].)