Filed 9/3/25  Shetty v. Block CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NIKI-ALEXANDER SHETTY, Individually and as Trustee, etc., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> THOMAS BLOCK et al., <br><br> Defendants and Respondents. | B338097 <br><br> Los Angeles County <br> Super. Ct. No. 22STCV05079 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Alison M. Mackenzie, Judge.  Affirmed.

Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiffs and Appellants.

Law Offices of Bruce M. Lorman and Bruce M. Lorman for Defendants and Respondents.

_____

## SUMMARY

Plaintiffs appeal from a summary judgment entered in favor of defendants in a lawsuit involving alterations to a promissory note and deed of trust. The trial court found that defendants' evidence sufficed to establish that one or more elements of each of plaintiffs' claims failed as a matter of law, and plaintiffs filed no opposition. Plaintiffs contend defendants did not meet their initial burden of proof on two points: the materiality of the alterations defendants admittedly made to the loan documents, and the statute of limitations.

We conclude defendants established that none of the alterations in the loan documents was fraudulently made, and plaintiffs therefore cannot be discharged from their obligations under the promissory note and deed of trust. (Cal. U. Com. Code, § 3407, subd. (b).) In addition, defendants' contention that no statute of limitation has accrued on any of their claims because "damage has not occurred" has no merit.

Accordingly, we affirm the judgment.

## FACTS

The plaintiffs are Niki-Alexander Shetty, suing as an individual and as trustee of the Niki-Alexander Family Trust, and Adina Zaharescu (Mr. Shetty's wife). The defendants named in plaintiffs' complaint are Thomas Block; S.B.S. Trust Deed Network; New Haven Financial, Inc. (New Haven Financial); and Jack and Sue Emrek, individually and as trustees of the Emrek Family Trust (the Emreks). Where appropriate we sometimes refer to all defendants collectively as "defendants."

Plaintiffs filed their complaint for damages and injunctive relief on February 9, 2022, and filed the operative first amended complaint in September 2022. The operative complaint alleged causes of action for wrongful foreclosure, quiet title, cancellation of instrument, declaratory relief, violation of Regulation Z (issued

2

pursuant to the federal Truth in Lending Act (TILA; 15 U.S.C. § 1601 et seq.)), fraud, an accounting, and violation of the unfair competition law (Bus. & Prof. Code, § 17200).

The lawsuit arises from a promissory note for $90,000, secured by a deed of trust on property located at 4351 La Barca Drive in Tarzana, plaintiffs' home. Plaintiff Adina Zaharescu signed the loan documents on December 29, 2005. The promissory note she signed (the "original note") called for 239 interest-only monthly payments of $900 starting February 1, 2006, with a final payment of $90,900 on January 1, 2026. An employee of New Haven Financial arranged the loan. The lender was not identified, but was entitled to transfer the note.[1] The complaint alleges Ms. Zaharescu was given unsigned copies of the loan documents.

The circumstances leading to the loan transaction appear to be undisputed. Plaintiffs' complaint alleges Ms. Zaharescu was seeking a loan to buy another property in Chatsworth, but the New Haven Financial loan did not fund in time so she obtained a loan for that purchase elsewhere. On January 31, 2006, she received the funds from the New Haven loan, which New Haven told her could not be undone.

Ms. Zaharescu made monthly payments until February 2008, when various problems resulted in her inability to make the payments. On April 9, 2008, a notice of default was recorded

---

[1] The original note was payable to: "(See Exhibit A Attached for Beneficiary Vesting(s)), (who will be called 'Lender')." The original note also stated: "I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under the Note will be called the 'Note Holder(s).' "

by an agent for New Haven Financial, showing the Emreks as beneficiary under the deed of trust.

Mr. Shetty, who had been out of the country, returned in May 2008 and reviewed the notice of default. When he discovered the lender and beneficiary under the deed of trust was the Emreks, he requested copies of the loan documents his wife had signed, and received them from New Haven Financial on July 3, 2008. Plaintiffs then realized for the first time that the note and deed of trust "were altered to reflect a lender we were never made aware of," among other alterations. The other alterations plaintiffs have asserted at various times in this lawsuit included a claim that the property collateralized had been changed, and the payment dates in the promissory note were modified to later dates (by one month).

On July 7, 2008, Ms. Zaharescu sent a notice of rescission demand under TILA to New Haven Financial and the Emreks. Ms. Zaharescu recorded the notice on September 25, 2008.

According to plaintiffs' complaint, on September 19, 2008, plaintiffs sued New Haven Financial and the Emreks in federal court for TILA violations and other claims, seeking rescission; on October 29, 2009, New Haven filed a bankruptcy petition and plaintiffs' action was stayed; and on June 13, 2011, New Haven's bankruptcy was dismissed.

On July 7, 2011, the Emreks assigned the deed of trust to defendant Thomas Block who, according to plaintiffs' complaint, is a defaulted debt buyer. (Plaintiffs say Ms. Zaharescu was not informed of the assignment, but their record reference says nothing about that.)[2]

---

[2] Indeed, plaintiffs' references to the record (except for procedural matters following the filing of their complaint) are exclusively to their original complaint, which was superseded by

4

Mr. Block took no action to collect the debt until April 26, 2021, almost 10 years later, when he filed a notice of default. Plaintiffs' complaint alleges Mr. Block then sent multiple payoff statements.

Except for describing the summary judgment proceedings (see *post*), plaintiffs do not recite or provide record references to any other facts they claim are significant in their opening brief. (See Cal. Rules of Court, rule 8.204(a)(2)(C) [an appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record"].)

On September 21, 2023, Mr. Block filed his motion for summary judgment, or in the alternative summary adjudication, together with a request for judicial notice of numerous documents.

On December 8, 2023, the Emreks filed a joinder in Mr. Block's motion. At some point not clear from the record, the summary judgment hearing was continued from its original date and set for February 20, 2024.

Plaintiffs' opposition was due on either February 5, 2024 or February 6, 2024.

On February 5, 2024, plaintiffs filed an ex parte application to continue the February 20, 2024 summary judgment hearing.

On February 6, 2024, the trial court denied plaintiffs' ex parte application for failure to demonstrate good cause, observing among other things that the trial schedule of plaintiffs' counsel did not constitute good cause for a continuance.

On February 15, 2024, defendants filed a reply declaration and memorandum, pointing out that no opposition had been filed despite defendants' warning on February 8, 2024, that any

their first amended complaint. Our references to plaintiffs' complaint refer to the operative first amended complaint.

5

opposition, if filed, would be late, and contending defendants had met their initial burden of proof.

On Friday, February 16, 2024, the last court day before the February 20 hearing, plaintiffs filed their opposition.

On February 20, 2024, the court granted defendants' motions for summary judgment, as well as the unopposed joinder and unopposed requests for judicial notice. The court explained its denial of plaintiffs' request for a continuance (as described above). Then the court determined that defendants' separate statements "suffice to establish that one or more elements of each of Plaintiffs' claims fail as a matter of law," shifting the burden to plaintiffs, who "filed no opposition to raise any triable issue of material fact as to the raised issues."

The court stated its reasons for finding that defendants' evidence sufficed: "Specifically, the undisputed facts show that each of the claims have no merit for the following reasons: (1) the absence of fraudulent alterations of the subject promissory note and deed of trust; (2) inapplicability of Regulation Z of the TILA statute due to Defendants being a small servicer of fewer than 5000 loans per year (12 CFR § 1026.41(e)(4)), (3) Plaintiffs' failure to tender the debt in relation to the deed of trust, (4) the instant case being barred by collateral estoppel and res judicata given a ruling in Plaintiffs' prior District Court action,[3] (5) the

---

3   This refers to a complaint plaintiffs filed in federal court against defendants Thomas Block and S.B.S. Trust Deed Network on July 18, 2021, asserting a cause of action for "enforcement of rescission of a loan under [TILA]" and various state claims. The ruling, filed January 27, 2022, granted defendants' motion to dismiss, concluding that "the statute of limitations for enforcement of rescission began to run at the latest 20 days after Zaharescu recorded her notice of rescission on September 25, 2008. This occurred 13 years before the filing of

absence of any foreclosure and, (6) the bar of the Statute of Limitations and laches as to alleged misrepresentations occurring in 2005 and Plaintiffs' alleged knowledge by 2008."

Judgment was entered on February 20, 2024, for defendants Thomas Block and the Emreks, individually and as trustees of the Emrek Family Trust. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

We review a grant of summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

"A party is entitled to summary judgment only if it meets its initial burden of showing there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. [Citation.] This is true even if the opposing party fails to file *any* opposition." (*Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App.5th 417, 434.)

Here, plaintiffs do not contend the trial court erred in not considering their late opposition.[4] They contend only that defendants did not meet their initial burden of proof. And on this point, they offer only two arguments. Both arguments fail.

---

this complaint, well outside the four-year statute of limitations. Hence Plaintiffs' claim is barred by the statute of limitations and must be dismissed." The court declined to exercise supplemental jurisdiction over plaintiffs' state law claims. The Ninth Circuit affirmed the district court's decision, agreeing that the plaintiffs' TILA cause of action for rescission was time barred.

[4] Nor do they argue the trial court erred in not granting a continuance of defendants' motion.

## 1. The Alterations

### a. The legal principles

Section 3407 of the California Uniform Commercial Code governs the alteration of negotiable instruments. An alteration includes "an unauthorized change in an instrument that purports to modify in any respect the obligation of a party." (Cal. U. Com. Code, § 3407, subd. (a).) As relevant here, "an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms." (*Id.,* subd. (b).)

Section 1700 of the Civil Code provides that "[t]he intentional destruction, cancellation or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act." A "material alteration" has long been described as "an alteration which change[s] the legal import or effect of the instrument." (*Blochman Commercial & Savings Bank v. Ketcham* (1918) 36 Cal.App. 284, 287 [Civ. Code, § 1700 was not applicable where court found plaintiff was authorized to fill in a blank space for the place of performance]; see also *Lin v. Coronado* (2014) 232 Cal.App.4th 696, 703 [" 'the modern rule is that the only alterations which will affect the validity of an instrument are those which are material; that is, alterations which change the legal effect of the instrument' "].)

Thus, the alteration of a negotiable instrument discharges a party only if it is fraudulently made. The alteration of a

8

written contract that is not a negotiable instrument is a material alteration only if it changes the legal effect of the contract.

### b.    Contentions and conclusions

There were three alterations to the loan documents placed before the trial court:  the identity of the lender, the identity of the property securing the promissory note, and the one-month extension of due dates.  Defendants' evidence established that none of these changes was fraudulently made:  Ms. Zaharescu knew the lender was not identified in the original note, which she understood was transferable; both the original and altered documents identified the La Barca Drive property as the collateral; and the delay in the due dates for plaintiffs to perform was not financially favorable to the lender and did not cause any damage to plaintiffs.

On appeal, plaintiffs make a single argument:  that the trial court "appl[ied] the wrong statute" when it found defendants had established the absence of fraudulent alterations in the loan documents.  According to plaintiffs, the loan documents were not negotiable instruments because the loan was secured by real property.  The law is clearly to the contrary, and the cases plaintiffs cite are inapt.

Plaintiff relies on a 112-year old case (*National Hardware Co. v. Sherwood* (1913) 165 Cal. 1, 5) that held that when a note is secured by a mortgage on land, the note is not negotiable.  But the law has changed since 1913, the year after Boston's Fenway Park was built.  As the Supreme Court stated much more recently:  "A promissory note is a negotiable instrument the lender may sell without notice to the borrower.  [Citation.]  The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment.  [Citations.]"

9

(*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 927.) This has long been the case. For a description of the statutory changes that removed security as an impediment to negotiability, beginning in 1923, see, e.g., *Wilson v. Steele* (1989) 211 Cal.App.3d 1053, 1061-1062.

In sum, the promissory note is a negotiable instrument; section 3407 of the Commercial Code governs alterations to negotiable instruments; and plaintiff met its burden to show the alterations to the loan documents were not "fraudulently made." (Cal. U. Com. Code, § 3407, subd. (b).) Plaintiff does not expressly contend the alterations *were* fraudulently made, and under section 3407, "[n]o other alteration discharges a party, and the instrument may be enforced according to its original terms." (*Ibid.*)[5]

---

[5] Defendants briefly contend, in response to plaintiffs' undeveloped assertion that Civil Code section 1700 applies, that even if the loan documents were not governed by Commercial Code section 3407, "they are still enforceable because none of the changes were material." That may well be so, and plaintiffs make no attempt to explain how the alterations change the legal effect of the documents. However, in earlier proceedings when the trial court granted a preliminary injunction preventing defendants from selling the property, the court concluded plaintiffs had "at least a colorable argument" that a one-month change in the maturity date would change the legal effect of the instrument. (See, e.g., *Hill & Morton, Inc. v. Coughlan* (1963) 214 Cal.App.2d 545, 549 [" 'The materiality of the change . . . does not depend upon whether or not the party not consenting thereto will be benefited or injured by the change, but rather upon whether or not the change works any alteration in the meaning or legal effect of the contract.' "].) Because it is unnecessary to our decision, we will not address the point here.

## 2.    The Statute of Limitations

The trial court also found defendants' evidence sufficed to show that plaintiffs knew by 2008 of "alleged misrepresentations occurring in 2005," so these were barred by the statute of limitations and laches.  On appeal, plaintiffs contend that no statute of limitation accrued because "damage has not occurred." According to plaintiffs, they had no right to prosecute an action for fraud until "appreciable and actual harm" occurred, and they did not suffer any "consequential damages" until defendant Mr. Block started foreclosure proceedings in 2021.  That is not the case.  They paid more than $32,000 on the promissory note, and knew in 2008 of their claim that the note was fraudulently altered, which if true would discharge them from their obligations under the note and entitle them to damages.

Plaintiffs seek to avoid the obvious conclusion that the statute of limitations for fraud ran long ago by claiming that defendant Mr. Block "triggered the continuing violation doctrine" by "ratif[ying]" a fraudulently altered document to start foreclosure proceedings.  This is not a reasoned argument supported by pertinent authorities, and neither is the contention that "the statute of limitations does not apply" because plaintiffs are "assert[ing] a defense against a contract."  (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 ["we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument"].)

One final note.  As already described, the trial court gave several other reasons for concluding that defendants had produced evidence sufficient to establish that each of plaintiffs' various causes of action had no merit.  These included the

11

inapplicability of Regulation Z, and the bar of collateral estoppel and res judicata based on a ruling in plaintiffs' 2021 federal lawsuit, where the court found the statute of limitations barred plaintiffs' claim for rescission under TILA.  Plaintiffs present no argument claiming error on any of these points.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover costs on appeal.



RUBIN, J.*

WE CONCUR:



WILEY, Acting P. J.



VIRAMONTES, J.

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.