[Civ. No. 5745.   Fourth Dist.   Dec. 4, 1958.]

EMILY K. MARKS, Respondent, v. CHESTER R. BUNKER et al., Defendants; LESTER V. PETERMAN, Appellant.

Charles P. Lester for Appellant.

Theodore A. Epstein for Respondent.

COUGHLIN, J. pro tem.*—This is an action for specific performance. In her complaint, the plaintiff Marks alleged that defendant Peterman was the owner of Lot 1, Tract 2924 in San Bernardino; that the defendant Bunker was the agent of Peterman, and at all times mentioned in the complaint was acting within the scope of his agency; that on September 3, 1950, both defendants entered into an agreement in writing with plaintiff to sell her the subject property for $550, which was the reasonable value thereof; and that the plaintiff performed her part of the agreement but the defendants have refused to execute a deed transferring title to her.

Peterman filed an answer admitting that he was the owner of the property, but denying all other allegations in the complaint. Bunker made no appearance and his default was entered.

The trial court found that Bunker was not the agent of Peterman; that all of the other allegations in the complaint were true; and that Peterman was estopped "from asserting or otherwise utilizing his pure record ownership" against the plaintiff "to defeat her claim . . . to ownership of said real property." No estoppel had been pleaded.

Judgment was entered against both defendants directing them to convey to plaintiff the property described in the complaint and, in the event they were unable to give a good and merchantable title to the property, ordered that she should recover from them the sum of $550, together with the interest paid by her under the contract.

*Assigned by Chairman of Judicial Council.

The defendant Peterman, alone, appeals from this judgment.

In 1947, Peterman, as owner and subdivider of said Tract 2924, entered into a written agreement with the Bunker Land Company, a corporation of which Bunker was President and the most active member, agreeing to sell this and another tract to the corporation for $58,140, payable in installments of $500 per month. It was agreed that the corporation might sell lots from these tracts and obtain a conveyance from Peterman either to it or its nominee upon payment of a designated amount, called a release price, in accordance with a schedule attached to the agreement; the amount paid on the contract price to date of request, if adequate, could be applied to such release payments; the release price for Lot 1, Tract 2924, was $250—this has not been paid; each month the corporation would furnish Peterman with a written statement covering sales of any of these lots; so long as no default existed by the corporation under the contract, Peterman would pay all taxes on the property not conveyed to the corporation. This agreement was not recorded.

The plaintiff testified that she purchased Lot 1 in 1950 and finished paying for it November 2nd, 1954; that she received a receipt book from Bunker to whom she made payments. Peterman testified that sometime in 1950 or 1951 he probably had knowledge that the plaintiff was purchasing lot 1; that he went to the tract periodically and saw Bunker there; that he had no knowledge of the business relationship between Bunker and any person to whom the latter sold a lot; that, as far as he was able, he cancelled his agreement with the Bunker Land Company in 1953; that the first time he knew plaintiff had paid for the lot was when she came to see him in the middle of 1955. The receipt book, which bore the title "Installment Receipt Book. Bunker Land Company, issued to Mrs. Emily E. Marks," was not introduced into evidence although marked as an exhibit for identification. It contained notations respecting times and amounts of payments together with the following statement: "Date September 3, 1950. Lot No. 1 Tract 2924. Purchase Price Five Hundred Fifty & No/100 ($550.00) Terms $5.00 deposit on 1st pymt. $20.00 bal of 1st pymt. Unpaid bal. $525.00. Pymts. $25.00 per mo. or more to 12/1 then $10 per mo. or more @ 6% interest." Tax bills for the lot in question, with Peterman's name as the assessee stricken out and the plaintiff's name inserted were sent to and paid by her for the years 1951 to date. None of the tax .

bills were introduced in evidence. Whether these bills were sent to plaintiff by the tax collector, by Bunker, or by Peterman was not established.

Appellant advances a number of grounds for reversal. Those hereinafter considered are determinative of this appeal.

■ The finding of the trial court that Peterman entered into an agreement in writing with the plaintiff is without evidentiary support. At most, the evidence shows that plaintiff agreed to purchase the lot in question from the Bunker Land Company; that her transactions were with Bunker as a representative of that land company; and that she paid him the agreed purchase price. There is no showing that Peterman was a participant in this agreement in any way; he did not personally participate; he was not represented by an agent; and the court expressly found that Bunker was not his agent. It also should be noted, that the complaint does not allege any cause of action to enforce an equitable right which the plaintiff might have had under the contract between Peterman and the Bunker Land Company if the release price on the lot in question had been paid, as was the situation in *Ex Parte Robinson,* 244 Ala. 313 [13 So.2d 402].

■ This state of the record requires the plaintiff to rely upon the doctrine of estoppel as the sole support for her judgment. However, the plaintiff's complaint was not based on estoppel; none was pleaded. ■ As a general rule, where estoppel is relied upon to state a cause of action the facts in support thereof must be pleaded. (*Fair Oaks Bank* v. *Johnson,* 198 Cal. 196, 208 [244 P. 335]; *Burk* v. *City of Santa Cruz,* 163 Cal. 807, 811 [127 P. 154]; *Sinai* v. *Mull,* 80 Cal.App.2d 277, 283 [181 P.2d 924]; *Swanson* v. *Thurber,* 132 Cal.App.2d 171, 181 [281 P.2d 642]; *Medeiros* v. *Cotta,* 134 Cal.App.2d 452 [286 P.2d 546].) ■ The plaintiff contends that any failure to plead estoppel was waived by failure of the defendant to object to the admission of evidence in support thereof, relying on such cases as *Pacific Finance Corp.* v. *Foust,* 44 Cal.2d 853, 858 [285 P.2d 632]; and *Wynn* v. *Treasure Co.,* 146 Cal.App.2d 69, 75 [303 P.2d 1067]. The record does not establish such a waiver. On two occasions when the defendant objected to testimony on the ground that it was immaterial and the plaintiff urged its admissibility "on the ground of estoppel" the court sustained the defendants' objections thereto. The testimony relied upon to support the estoppel was admissible on other issues.

█ Moreover, the claim of estoppel is not well taken. The court found that Peterman was "estopped, from his said contract (with Bunker Land Company) conduct, negligence and failure to supervise, pay attention to or to exercise any control whatsoever over the disposition and selling practices of his said vendee Chester R. Bunker, after granting and giving to the latter the sole indicia of ownership of said real property and the otherwise unlimited power and authority to show and represent himself as the owner of and fully entitled to dispose of and deal with the same while having actual knowledge of plaintiff's purchase and payments of and on same, from asserting or otherwise utilizing his pure record ownership thereof against the plaintiff in this action to defeat her claim and suit herein to ownership of said real property." In ultimate effect, these findings are a declaration that Peterman is estopped to assert his title to defeat the plaintiff's claim to ownership. This determination is based primarily on conclusions of law and not upon ultimate facts, and a decision upon the issue requires a consideration of both the findings and the evidence.

█ "It has been the rule in this state since the case of *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, that in order to bring about an estoppel against assertion of ownership of real property, four conditions against the owner of real property are necessary: 1. that the party to be estopped was apprised of the true state of his own title; 2. that he made the admission with intent to deceive or with such culpable negligence as to amount to constructive fraud; 3. that the other party was not only destitute of knowledge of the state of the title, but also of the means of acquiring knowledge; and 4. that he relied on the admission to his damage." (*Taliaferro* v. *Colasso*, 139 Cal.App.2d 903, 907 [294 P.2d 774].)

█ Peterman made no representation to the plaintiff, either actual or implied, that Bunker was the owner of the property in question. █ The vendor under a contract of sale who places a vendee in possession of the subject property exercises a legal right; does not thereby make any misrepresentation to prospective purchasers from the vendee respecting title; and is not chargeable with culpable negligence in so doing. █ A vendee under an agreement of sale lawfully may contract to sell to another the property he is buying, even though he does not have title thereto at the time; his obligation is to have title when he is required to convey. (*Lemle* v. *Barry*, 181 Cal. 6, 9 [183 P. 148]; *Wheat* v. *Thomas*, 209 Cal.

306, 316 [287 P. 102].) It would be inequitable to charge a vendor with misconduct should he, in his agreement of sale, expressly consent to and regulate the right of his vendee to resell the property being purchased; a right which the vendee has as a matter of law. The finding that Peterman gave Bunker "sole indicia of. ownership" and the otherwise unlimited power and authority to represent himself as the owner, is without evidentiary support.

■ There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title—the effect of the estoppel being to forfeit his property and transfer its enjoyment to another. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, 368; *Stevens* v. *Oakdale Irr. Dist.*, 13 Cal.2d 343, 353 [90 P.2d 58]; *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105, 142 [287 P. 475].) ■ The element of turpitude may be established by proof of an intentional deceit or that degree of negligence arising from careless or culpable conduct which amounts to evidence of an intent to deceive. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, 368; *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, 491 [256 P.2d 32].) ■ However, a designed fraud is not a necessary element of estoppel (*Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 349 [159 P.2d 24].) ■ The defendant Peterman was not charged with the duty of supervising Bunker's sales activities, and his failure to do so did not give rise to a charge of negligence against him. Nor under the circumstances, was he required to seek out the plaintiff and warn her of possible injury in the event her seller, Bunker, did not make his payments under the subdivision sale agreement and obtain a release as therein provided. ■ Silence will not create an estoppel except under circumstances which in equity and good conscience imposed a duty to speak, (*Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655, 683 [92 P. 1021], and none appears in this case.

■ Peterman became the owner of tract 2924 in 1947. Thereupon his title became, and ever since has been, a matter of record. On September 10, 1947, in compliance with the law (Bus. & Prof. Code, §§ 11010 and 11011) he filed a Notice of Intention to Subdivide and a Subdivision Questionnaire with the State Real Estate Commissioner, who issued a subdivision Public Report therein on September 30, 1947 (Bus. & Prof. Code, § 11018). The existence of the agreement of

sale between Peterman and Bunker Land Company was revealed to the commissioner in the course of the foregoing proceedings and was noted in his report.

An examination of the public record, readily available to the plaintiff, would have disclosed Peterman's ownership; through the Real Estate Commissioner's Public Report, she had the means of acquiring knowledge concerning Bunker's interest; and from the tax bills received by her ever since 1951, she had actual notice that Peterman and not Bunker was the assessee of the property she was buying.

There is neither pleading, finding nor proof that the plaintiff relied on any representation or conduct of the defendant Peterman resulting in an agreement to purchase property from Bunker, or in the payment of money to him. ▇ A party invoking the doctrine of estoppel must be ignorant of the true facts and must have sustained injury in reliance upon the representation or conduct of the party to be estopped (*Lusitanian-American Dev. Co.* v. *Seaboard D. C. Corp.,* 1 Cal.2d 121, 128 [34 P.2d 139]; *Joseph George, Distr.* v. *Department Alcoholic etc. Control,* 149 Cal.App.2d 702, 712 [308 P.2d 773].)

▇ In those cases where one party mistakenly has placed improvements upon the land of another it consistently has been held that the latter's continued silence after obtaining knowledge of the former's intended expenditures, in the absence of a showing of turpitude on the part of the landowner, was not sufficient to estop him from asserting his title. (*Stevens* v. *Oakdale Irr. Dist.,* 13 Cal.2d 343, 353 [90 P.2d 58]; *Leonard* v. *Flynn,* 89 Cal. 535, 542 [26 P. 1097, 23 Am.St.Rep. 500]; *Taliaferro* v. *Colasso,* 139 Cal.App.2d 903, 907 [294 P.2d 774].) ▇ The same principles apply to the case at bar. There was no showing of turpitude on the part of Peterman, and he is not estopped to assert his title. The real cause of plaintiff's predicament was the contractual faithlessness of Bunker and her failure to use the means at hand to ascertain the status of the title to the property she was acquiring. A search of the records in the office of the county recorder, the county assessor, or the Real Estate Commissioner would have informed her adequately respecting the status of the title to the land she proposed to purchase.

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.