20 Cal.Rptr. 560]

[Civ. No. 6691.   Fourth Dist.   Mar. 29, 1962.]

JEANNETTE EMERICK COWDEN, Plaintiff and Respondents, v. GEORGE R. KRESS et al., Defendants and Appellants.

(1)

2

James R. Smith for Defendants and Appellants.

McCarroll & McCarroll and Mary H. McCarroll for Plaintiff and Respondent.

GRIFFIN, P. J.—Plaintiff, cross-defendant and respondent, Jeanette Emerick Cowden, brought this action to quiet title to a parcel of real property and also sought the additional remedy of specific performance and proceeded under the theory of constructive trust against defendants, cross-complainants and appellants, George R. Kress, Houston H. Slate, and wives, and Bank of America National Trust and Savings Association (hereinafter referred to as the Bank), as administrator of the Estate of Ross J. Artese, deceased.

Basically, there is no dispute as to the evidence. Plaintiff married Ross J. Artese in 1944. At the time of this marriage, plaintiff had substantial separate property. Artese owned property in Orange County. On October 9, 1948, Artese and plaintiff entered into a written agreement whereby he sold to her an undivided one-half interest in his property in Orange County for the sum of $21,000. The agreement included the property involved in this case and other property as well. Artese managed plaintiff's affairs and she testified that he told her that he had withdrawn the balance of the purchase price under the contract from her account and that he would send in the papers to be recorded. Plaintiff had given

Artese a power of attorney which authorized him to withdraw and use her funds. On October 27, 1948, revenue stamps in the sum of $23.30 were affixed to the October 9 agreement, were cancelled, and the agreement was then recorded in that county. This was done by Artese's attorney. Thereafter, in January 1949, Artese delivered the recorded instrument to plaintiff at their home in Utah and said to her, "Here is your recorded deed and now you don't have to worry about it any more." The recorded document was placed in the safe in the office in their home. From then until he died, Artese treated plaintiff as a part owner of the property, and had her sign documents indicating her ownership at various times.

Artese died intestate on May 18, 1954, in Utah, and after his death plaintiff continued to reside in that state. The Bank was appointed administrator for the probate of the estate of Artese in California. Plaintiff's Utah attorney sent the Bank the original deed whereby Artese acquired the property and a photostatic copy of the agreement between plaintiff and Artese dated October 9, 1948. The attorney notified the Bank at that time that plaintiff claimed an undivided one-half interest in and to the property covered by the agreement and stated that she had paid the full purchase price therefor.

During 1956, the Bank purported to sell a fee in the entire property here involved to defendant Kress. Through an oversight, the title insurance company which covered the transaction did not discover plaintiff's recorded agreement. The sale was completed. The title company discovered its omission and the Bank, at the request of the title company, sent plaintiff a quitclaim deed to the property whereby she would convey her interest in the property to the defendants. The only explanation made was that the title company requested her signature on the deed. Plaintiff did not sign the quitclaim deed, but came to California, learned of the facts surrounding the sale, and also learned that defendant Kress had transferred a one-half interest in the property to defendant Slate. Plaintiff demanded a deed of a one-half interest in the property from the Bank and it refused. The estate was closed and plaintiff received, as a one-third distributee, the sum of $290.13. Meanwhile, plaintiff filed the instant action.

After trial, the court found generally that plaintiff is now the equitable owner and entitled to legal ownership in fee simple of an undivided one-half interest in the described property here involved; that the agreement set forth between plaintiff and her husband was duly executed and recorded,

whereby Artese agreed that in and for the consideration of the sum of $21,000, to be paid to him by plaintiff, he would convey to her a one-half interest in and to said property, in addition to other property not herein involved, by general warranty deed, said deed to be executed when the plaintiff paid the balance of the purchase price of $5,000; that plaintiff paid said balance and demanded said deed from Ross J. Artese about October 27, 1948; that plaintiff believed said agreement, as recorded, was a warranty deed to said property, and Ross J. Artese treated plaintiff as an owner of an undivided one-half interest in it; that on July 26, 1954, letters of administration in the Estate of Ross J. Artese, deceased, were issued to the Bank, which thereupon qualified as administrator; that on July 7, 1954, said Bank received, through plaintiff's attorney, a photostatic copy of the original deed dated July 29, 1948, under which Ross J. Artese was the grantee of the property involved herein, and a photostatic copy of the agreement of October 9, 1948; that said Bank was also notified that plaintiff claimed an undivided one-half interest in the property covered by said agreement and that the parties considered this agreement as a deed and for that reason decedent had not executed a warranty deed during his lifetime; that plaintiff performed all the obligations required by her to be performed under the agreement of October 9, 1948; that on January 30, 1956, defendant Bank received a written bid from defendant Kress offering to purchase the "following described real property *belonging to the estate* of the above named decedent" (italics ours) for the sum of $5,000; that prior to petitioning the court for confirmation of the sale to defendant Kress, defendant Bank requested and received a preliminary title report from the title company; that said report failed to disclose the recorded contract of October 9, 1948; that said Bank published notice and petitioned the court to confirm the sale to Kress pursuant to his written bid (i.e., the interest of the estate therein) ; that an order was made confirming the sale of this interest on March 16, 1956, and an administrator's deed was issued on June 19, 1956, conveying to Kress all the right, title and interest *of decedent* at the time of his death and all interest that the estate might have subsequently acquired by operation of law or otherwise in said real property described in the written bid; that at no time was plaintiff informed by the Bank or anyone that the Bank was purporting to sell her undivided one-half interest in and to said property; that she was at no time, prior to the sale, informed

that the interest of the estate had been advertised or sold, and at no time was she requested to enter into any sale or to sell her undivided one-half interest or to join in any deed; that the title company issued a policy of title to Kress, insuring in him full fee title; that on April 3, 1956, Kress deeded an undivided one-half interest in and to the whole of the property described to Houston H. Slate; that no revenue stamps were affixed thereto; that said deed was recorded on June 26, 1956; that plaintiff was first notified that defendant Bank had sold an interest in the property in November 1956 when the Bank sent a quitclaim deed to her for signature which she refused to sign; that about January 8, 1957, plaintiff informed defendants Kress and Slate that she was the owner of an undivided one-half interest therein and demanded a quitclaim deed therefor and that defendants refused; that the original written bid of Kress, the publication of sale and the petition for confirmation of sale, as well as the original order confirming sale, all incorrectly described the real property purported to be sold by the estate; that Ross J. Artese died intestate, leaving plaintiff, his widow, and certain other defendants, his only children and heirs at law; that demand was made upon the Bank as administrator for a deed of the premises to her, but it refused; that the named defendant children, as well as the Bank, filed a disclaimer here; and that plaintiff, the widow, inherited one-third of Ross J. Artese's estate under the laws of succession.

The trial court then found that, upon receipt of the $5,000 from Kress, the Bank paid certain bonds that had been foreclosed against the property in the sum of $2,957.94 and delinquent taxes in the sum of $405.68, which indebtedness was against the whole of the property involved in this action; that plaintiff received $290.13 through the estate as her share of one-third of one-half of the net proceeds received from Kress; that plaintiff did not receive a copy of the inventory and appraisement filed in the estate of her husband, nor did she ever know the contents of any inventory and appraisement prior to the sale of the real property in the within action; and that the agreement of October 9, 1948, is not barred by the provisions of any section of any law of the State of California. The trial court found generally against the allegations of defendants' cross-complaint. It concluded that plaintiff was the equitable owner and entitled to the legal ownership of the real property described in her amended complaint; that at all times after October 27, 1948, Ross J. Artese, and after his

death his administrator, the Bank, and after the purported sale to defendants herein, defendants, and each of them, held said property in trust for plaintiff; that defendant Bank had actual notice of plaintiff's equitable ownership in and to the undivided one-half interest in the property and that defendants, and each of them, had constructive notice of such interest; that plaintiff is not estopped from asserting her ownership thereto and that she is entitled to a judgment quieting title to an undivided one-half interest therein under the contract of October 7, 1948. It then concluded that plaintiff have an interlocutory decree, that her title to the undivided one-half interest be quieted on condition that plaintiff do equity by paying defendants her one-half of the delinquent taxes and bonds on said property and by reimbursing Kress and Slate for one-half of the net amount received by her as distribution in the Estate of Ross J. Artese of her share of the proceeds of the sale of said property in the sum of $290.13, plus interest; that if plaintiff complies with this condition by paying said sum to said defendants, or by depositing the same in court for said defendants within 60 days from July 27, 1960, she shall be entitled to a final decree herein quieting title to said real property; otherwise, a decree shall be entered in favor of said defendants. Judgment was entered accordingly. Defendants appealed from said judgment.

They raise two points on this appeal: (1) that the evidence failed to justify the finding and conclusion that plaintiff performed the contract of October 9, 1948 (citing such authority as Civ. Code, § 3392; *Mayer* v. *Beondo,* 83 Cal. App.2d 665, 667 [189 P.2d 327, 190 P.2d 23]; *Goodale* v. *West,* 5 Cal. 339; and (2) that plaintiff is estopped from asserting her claim to an undivided one-half interest in the property under the principle that: ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.'' (Civ. Code, § 3543.) (See also *Conklin* v. *Benson,* 159 Cal. 785 [116 P. 34, 36 L.R.A. N.S. 537].)

As to the first contention, it is argued that plaintiff never proved that the additional $5,000 mentioned in the agreement of purchase between plaintiff and her husband was ever paid and that there was no showing that plaintiff ever paid the taxes on the property. In this connection, plaintiff testified that in September 1948 she received a certified check for $20,000, endorsed it and delivered it to her husband. She

further stated that her husband had a power of attorney to draw on her account and a few days after she gave him the $20,000 check he told her he was going to draw $5,000 out of her account and send the deed in; that she believed him; that he handled all of her business for her, including payment of taxes; and that her husband thereafter treated her as an owner. The court found, upon sufficient evidence, that the $5,000 had been paid and that plaintiff performed all of the obligations of the agreement. There is no evidence to the contrary.

There were certain taxes due which it appears were accumulated after the agreement was performed by plaintiff on October 27, 1948. Plaintiff was entitled to a deed as of that date. If her deceased husband thereafter failed to pay taxes thereon, defendants may not now argue that specific performance should be denied because plaintiff did not specifically perform. (*Radich* v. *Gak*, 61 Cal.App. 375 [214 P. 1000]; *Mayer* v. *Beondo, supra,* 83 Cal.App.2d 665; Prob. Code, § 77.)

Point two: "Means of knowledge," such as recording in public records, as manifested in this case, is deemed in law to be knowledge. (*Wheaton* v. *Nolan*, 3 Cal.App.2d 401, 403 [39 P.2d 457].) From and after October 27, 1948, the date of recording of the written agreement, defendants had constructive notice of plaintiff's rights claimed under the agreement. Defendants could not qualify as bona fide purchasers for value *without notice* thereafter. The administrator Bank also had actual notice of the contract and of the claims of plaintiff from July 7, 1954. The error appears to have resulted from the failure of the title company to give attention to the recorded instrument and their insuring title in fee to the whole of the property in question. Defendants cannot urge this error as being grounds for estoppel against plaintiff. (*Marks* v. *Bunker*, 165 Cal.App.2d 695, 702 [332 P.2d 340].) The finding that plaintiff was the equitable owner of a one-half interest in said property and that defendants held said interest in trust for plaintiff has sufficient evidentiary support.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.