[Civ. No. 25265.   First Dist., Div. One.   Feb. 28, 1969.]

IVAN J. MILLER et al., Plaintiffs and Respondents, v. ALEX JOHNSTON et al., Defendants and Appellants.

M. Maroni Smith for Defendants and Appellants.

Bagshaw, Martinelli, Weissich & Jordan and Leland H. Jordan for Plaintiffs and Respondents.

SIMS, J.—Defendants Johnston have appealed[1] from a judgment which subjects two portions of their property to easements for pedestrian and vehicular ingress and egress to the property of plaintiffs Miller. The judgment requires plaintiffs to bear the costs of maintaining the improvements over the easements and to adjust their use of the easements so as to permit near maximum use by defendants while allowing reasonable ingress and egress to plaintiffs' property, and permanently enjoins the defendants from interfering with the reasonable use and enjoyment of the easements by plaintiffs.

In its conclusions of law the trial court ruled that the plaintiffs had prescriptive easements over both parcels; that an agreement executed in 1953 by which one of the plaintiffs purported to terminate any easement or right of way over one of the parcels in return for a revocable license was void for lack of consideration; that the defendants were estopped to

---

[1]The complaint was filed October 14, 1965, and a temporary restraining order was issued to prevent defendants from making contemplated changes in the grade, and erecting a barrier across a portion of the property in dispute. On November 30, 1965, the court ordered a temporary injunction to issue upon plaintiffs' posting $2,000 bond. The case did not come on for trial until July 10, 1966. On July 22d the court filed its "Memorandum of Partial Decision." After briefs were submitted, the court on August 5, 1966 made its "Order for Findings." The plaintiffs having failed to act, the defendants on April 11, 1967 filed a notice of motion that findings be entered and filed, and that the restraining order be dissolved. This was followed on April 17, 1967 by a "Notice of Appeal . . . from the Order of the Court and subsequent judgment to be filed respecting said order." Findings of fact and conclusions of law were signed and filed June 27, 1967, but a judgment was not filed and entered until November 16, 1967. Although the "Order for Findings" is not an appealable order, under the circumstances the notice of appeal may be treated as filed immediately after entry of the judgment. (Cal.Rules of Court, rule 2(c); see *Hohn* v. *Hohn* (1964) 229 Cal. App.2d 336, 338-340 [40 Cal.Rptr. 125]; 3 Witkin, Cal. Procedure (1954) Appeal, § 125, pp. 2301-2302, and 1967 Supp., pp. 967-969.)

attack plaintiffs' claim to any easement over the latter parcel; that plaintiffs were equitably entitled to an easement over that parcel; and that in any event, if the law permitted, plaintiffs should be awarded an easement over the second parcel upon payment of $200. Defendants attack each of these conclusions, and the findings of fact upon which they are predicated, on the grounds they are not sustained by the evidence or by pertinent legal principles. It is concluded that the trial court correctly concluded that plaintiffs had a prescriptive easement over the first parcel; that the court erred in avoiding the agreement, which was valid and served to prevent the acquisition of a prescriptive right to the parcel it covered; but that nevertheless the court properly adjusted the equitable rights of the parties in presently awarding plaintiffs the easement over the second parcel. It is unnecessary to consider the court's authority to permit the exercise of the power of eminent domain by plaintiffs.[2]

*General Facts*

On January 17, 1951 plaintiffs acquired an improved residential lot lying about 100 feet southwesterly of Cloud View Road, a public street in the City of Sausalito. Their deed provided for a nonexclusive 15-foot wide easement which runs 115 feet northwesterly, from a point 15 feet southwesterly of the northwest corner of their property, past that corner and along the southwest boundary of the property which was acquired by defendants in an unimproved condition on December 31, 1951. The relative location of the properties, the easement and plaintiffs' driveway to which it leads, may be visualized by picturing the letter "L" or more accurately the open angle of a hockey stick. The recorded easement leading

[2]In addition to the findings discussed in this opinion, the court found: "The reasonable value of an easement over triangle B in favor of plaintiffs, if plaintiffs were to be required to pay the value thereof, would be the sum of $200.00." It concluded: "Although the Court concludes that plaintiffs already possess a prescriptive easement over triangle B, the Court also concludes that, if such easement did not already exist in favor of plaintiffs, it would be just and equitable to grant and decree in favor of plaintiffs such an easement over triangle B, upon payment by plaintiffs to defendants of the sum of $200.00. In this connection, however, the Court doubts that it has legal authority to create such an easement by its decree." Plaintiffs rely upon the provisions of section 1001 of the Civil Code and of section 1238, subdivision 6 of the Code of Civil Procedure. (See *Linggi* v. *Garovotti* (1955) 45 Cal.2d 20, 23-26 [286 P.2d 15]; and see comments *Reese* v. *Borghi* (1963) 216 Cal.App.2d 324, 329-330 [30 Cal.Rptr. 868]; and *Taylor* v. *Warnaky* (1880) 55 Cal. 350, 351.) Defendants contend that the provisions of section 1238 are expressly limited to "public uses." (See *People* v. *Oken* (1958) 159 Cal.App.2d 456, 460-461 [324 P.2d 58].)

to Cloud View Road is represented by the perpendicular. Defendants' property, which fronts on Cloud View Road, is embraced within the angle. The horizontal bar would represent the northwest boundary of plaintiffs' property to which their entrance from the easement leads. Southwest of the easement and fronting on Cloud View Road is the Gump property. At the southeast end of the easement is the Linehan property. It abuts on the end of the easement and runs northwesterly approximately 15 feet along the southwest line of the easement to the Gump property. The recorded easement is appurtenant to all four properties.[3]

At the time plaintiffs acquired their property in 1951 there was, and there now is, an improved paved driveway or roadway from Cloud View Road to the properties of plaintiffs and the Linehans. It generally follows the alignment of the recorded easement. The pavement, however, lies outside the recorded easement and encroaches upon the defendants' residential lot in two locations. The northerly parcel (referred to by the parties and in the findings as triangle ''A,'' and in the judgment as ''Parcel 1'') is a triangle containing about 150 square feet and extending into defendant's property 4.48 feet along Cloud View Road, and running to a point 75 feet southeasterly along the line of the recorded easement. The southerly parcel (referred to by the parties and in the findings as triangle ''B,'' and in the judgment as ''Parcel 2'') contains about 50 square feet and extends 6.0 feet along the boundary line common to plaintiffs' and defendants' properties, and then on a 26.38 foot arc, which bulges toward the true corner of defendants' property, to the same point on the recorded easement line as designates the apex of triangle ''A.''

The remaining facts are reviewed below in connection with the contentions of the parties.

*Prescriptive Right Over Parcel 1*

The court found: ''7. The area designated as triangle A has been openly and notoriously used by plaintiffs and their predecessor owners for pedestrian and vehicular ingress and egress from their residential lot to the public street for a continuous period of more than fifteen (15) years prior to the commencement of this action.''

The testimony indicates that the paved driveway had existed and been maintained since at least 1948 or 1949 in the

---

[3]This statement appears in plaintiffs' brief and is not disputed by defendants.

location in which it was established at the time of trial; and that it was continuously used as a driveway by the plaintiffs. Defendants acknowledged that it had been used for many years without permission or any agreement.

"It is true that title to an easement for the use of a private roadway must be established by clear and satisfactory evidence that it was used for more than the statutory period of five years openly, notoriously, visibly, continuously and without protest, opposition or denial of right to do so. But clear and satisfactory evidence of the use of the road in that manner creates a *prima facie* title to the easement by prescription. Such evidence raises a presumption that the road is used with an adverse claim of right to do so, and in the absence of evidence of mere permissive use of the road, it will be sufficient upon which to sustain a judgment quieting title to the easement therein." (*Wallace* v. *Whitmore* (1941) 47 Cal.App.2d 369, 372-373 [117 P.2d 926]. See also *Van Amersfoort* v. *Young* (1951) 105 Cal.App.2d 22, 25-27 [332 P.2d 569]; *Shonafelt* v. *Busath* (1944) 66 Cal.App.2d 5, 7-9 [151 P.2d 873]; *Crawford* v. *Lambert* (1934) 136 Cal.App. 617, 621 [29 P.2d 428]; and *Wells* v. *Dias* (1922) 57 Cal.App. 670, 672 [207 P. 913]. Cf. *Peck* v. *Howard* (1946) 73 Cal.App.2d 308, 325-326 [167 P.2d 753]; and *Nelson* v. *Robinson* (1941) 47 Cal.App.2d 520, 526 and 528 [118 P.2d 350].) The fact that the pavement was placed on the property ultimately acquired by defendants, and that it was subsequently utilized as a right of way under the mistaken belief that it lay within the recorded easement, does not defeat the rights acquired by the use adverse to the rights of the true owners. (*Shonafelt* v. *Busath, supra,* 66 Cal.App.2d at p. 13.)

Defendants erroneously rely on the principle that one common owner or user cannot acquire rights by adverse possession against another without giving notice that his use is hostile. (See *Johns* v. *Scobie* (1939) 12 Cal.2d 618, 623-624 [86 P.2d 820, 121 A.L.R. 1404]; and 3 Am.Jur.2d, Adverse Possession, § 53, pp. 142-143.) This contention overlooks the fact that the respective rights claimed by plaintiffs and defendants in Parcel 1 do not stem from a common title. "It is settled law in this state that exclusiveness of user is not essential to acquisition of a prescriptive easement." (*Marangi* v. *Domenici* (1958) 161 Cal.App.2d 552, 556 [326 P.2d 527]. See also *Crawford* v. *Lambert, supra,* 136 Cal.App. 617, 620; and *Wells* v. *Dias, supra,* 57 Cal.App. 670, 673.)

The findings of fact, conclusions of law and the

judgment with respect to Parcel 1 are sustained by the evidence and the law.

## Prescriptive Rights Over Parcel 2

The court found: "9. For more than five (5) years preceeding September 18, 1953, plaintiffs and their predecessors in the ownership of their property openly, notoriously, and under a claim of right, tranversed and used triangle B for pedestrian and vehicular access from their property to Cloud View Road. At all times since September 18, 1953, plaintiffs have continued to use said triangle B for the same purposes and in the same fashion." This finding is in part predicated upon a general finding which reads, "6. The paved driveway or roadway from Cloud View Road to plaintiffs' property existed in its present condition, including the areas of encroachment upon defendants' property, at the time plaintiffs acquired their property and for many years prior thereto."

The plaintiffs are entitled to take advantage of the use made of the property in dispute by their predecessors in interest. (*Shonafelt* v. *Busath, supra,* 66 Cal.App.2d 5, 13-14.) Defendants contend, however, that there is no evidence to show the nature of the use made of that property prior to the time it was acquired by the plaintiffs in 1951.

The plaintiffs did establish that in the latter part of 1936 or the early part of 1937 a utility pole, which appears to be located at the southerly edge of plaintiffs' entrance on the boundary line between plaintiffs' and Linehans' properties, was first erected to furnish service to a residence then located on what was to become plaintiffs' property. Other testimony indicated that in 1948 or 1949 the paved driveway and the entrance to the property were in the same locations as found at the time of trial. This evidence sustains the second quoted finding, No. 6. It, nevertheless, does not adequately cover the question of the nature of the use prior to 1951. It may be inferred that the occupants of the dominant tenement used the recorded easement and that portion of the pavement which encroaches on Parcel 2. The record is silent, however, as to the terms, if any, under which such use was made. It is unnecessary to pursue this inquiry because whatever rights were acquired by plaintiffs and their predecessors in interest by use prior to September 18, 1953, and also the nature of the use by plaintiffs subsequent to that date, are affected by the agreement made on that day.

*Effect of the Licensing Agreement*

■ The trial court found: "8. On September 18, 1953, plaintiff Ivan J. Miller signed a written document which purported to relinquish any interest plaintiffs might have in the area designated as triangle B. . . .

"10. At the time plaintiff Ivan J. Miller signed the written document dated September 18, 1953, no monetary or other consideration passed from defendants to plaintiffs or either of them. Upon said date, plaintiffs were the owners of an easement by prescription over said triangle B for purposes of pedestrian and vehicular access from their property to Cloud View Road. The rights and privileges purportedly granted to plaintiffs by the document of September 18, 1953, were already owned by plaintiffs at the time said agreement was executed and delivered."

The court concluded, "The document dated September 18, 1953, executed by plaintiff Ivan J. Miller, was not supported by any lawful consideration and said agreement is therefore void for lack of consideration."

The pertinent portions of the agreement are set forth in the margin.[4] The map referred to roughly depicts that portion of defendants' property which is embraced in Parcel 2.

---

[4]"AGREEMENT FOR USE OF ROADWAY BY AND BETWEEN ALEX JOHNSTON AND DR. IVAN J. MILLER.

"THIS AGREEMENT MADE THIS 18th day of September, 1953, between ALEX JOHNSTON and DR. IVAN J. MILLER, both of Sausalito, California,

"WITNESSETH:

"WHEREAS, the parties hereto are land owners, owning land contiguous one to another, in Sausalito, California, and

"WHEREAS, there now exists a right of way parallel to land owned by ALEX JOHNSTON, being parallel to the more southwesterly line of land belonging to ALEX JOHNSTON, as it appears on the map attached hereto, which parallel right of way continues at an angle across the southeasterly corner of the property belonging to ALEX JOHNSTON, as an entrance and roadway for DR. IVAN J. MILLER, for entrance to his property, which is contiguous to the property of ALEX JOHNSTON.

"AND WHEREAS, the parties hereto are desirous of terminating any easement or right of way that exists over the land of ALEX JOHNSTON, and creating in its stead a terminable license for the use of said right of way, the parties do now therefore agree as follows:

"1. In consideration of the following premises, DR. IVAN J. MILLER does hereby release and abandon to ALEX JOHNSTON any easement, privilege or license that he may own, or may have heretofore owned, with respect to the right of way or easement or license to use a roadway as it may encroach upon or cross upon any portion of the land owned by ALEX JOHNSTON, as hereinbelow described, with full intention of terminating said easement, license, or right of way.

"2. The parties do now therefore agree that for one year from date, and automatically renewable for additional one year periods thereafter, unless otherwise terminated in writing by ALEX JOHNSTON, or his assigns, within thirty (30) days of the end of one year from this date, or

Dr. Miller testified that he received no monetary considera-
tion for the execution of the agreement, and that, thereafter,
he and his wife continued the use of the encroaching paved
right of way in the same manner as they had before. The
plaintiffs' opening statement, which may be treated as an
admission, disclosed that in 1953 the defendants' attorney
advised the plaintiffs that they were trespassing upon defend-
ants' property; that the plaintiffs turned the matter over to
their attorney; and that the agreement was signed on his
advice.[5]

Plaintiffs' defense of the findings and conclusions of the
trial court is predicated upon the hypothesis that the evidence
produced in July 1966 establishes that they had an easement
by prescription in 1953, and that there was no consideration
for the agreement because plaintiffs received a lesser interest
than that they already had. In support of its contention that
the agreement can be avoided, plaintiffs rely upon *Hunter* v.
*Hunter* (1942) 21 Cal.2d 228 [130 P.2d 704] and *Bard* v.
*Kent* (1942) 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032]. In
the former case the obligors under a note and deed of trust,
who had received parental assistance in the purchase of a
home, were permitted to show that the consideration for such
assistance had been previously furnished, and that the note
and deed of trust were given to the parents to protect the
latter in the event the son and daughter-in-law should prede-
cease the parents. The court upheld a finding that the instru-
ments were executed and delivered, not only without consid-
eration, but "as a protective measure only." (21 Cal.2d at p.

within thirty (30) days of the ending of any one year of any auto-
matically renewed one-year period, by mailing said notice addressed
to DR. IVAN J. MILLER, at the address of 75 Cloud View Road, Sausalito,
California, DR. IVAN J. MILLER shall have the privilege and license to
the use of a right of way over the southeasterly corner of land owned by
ALEX JOHNSTON, as it shall be more particularly hereinafter described.
That that said use shall be an unobstructed use for the passage and
repassage of vehicles for the enjoyment of DR. IVAN J. MILLER and his
guests.

"3. That as long as this privilege shall be in existence, that particular
portion of the area as it may encroach the land of ALEX JOHNSTON, shall
be maintained in repair by DR. IVAN J. MILLER.

"4. That this is not a use that will preclude the use thereof by the
grantor, ALEX JOHNSTON, but is a common use that may be enjoyed by
both grantor and grantee.

"5. That this is an exclusive use, flowing only to DR. IVAN J. MILLER,
and not to his successors in interest. . . ."

[5]The suggestion that this was erroneous advice must be weighed
against the possibility that the attorney consulted the respective prede-
cessors in interests of plaintiffs and defendants and ascertained that the
use of the disputed triangle was permissive. (See opinion, *infra*.)

232.) If there was a protective measure in the transaction in this case, it was to protect plaintiffs by making certain, although revocable, what lay only in parol, subject to the exigencies of proof. (See fn. 4, *supra*, and opinion, *infra*.) In the latter case, the court sustained a finding that no consideration had been given for an option, and that it was therefore revoked by the offeror's death. (19 Cal.2d at pp. 451-452.) The principal issue was whether the payments made by the optionee to others had been bargained for as consideration by the optioner. The court ruled, ''No act of an offeree, however, can constitute consideration binding upon the offeror unless the latter agrees to be bound in return therefor. [Citations.]'' (*Id.*, at p. 452.) No such question is presented in this case. The agreement clearly sets forth the consideration bargained for by each party.

Defendants point out that the license, although revocable, is not an illusory consideration for the plaintiffs' surrender of the rights to which they then may have been entitled, because the revocation of the license could only be on notice. (See *Mutz* v. *Wallace* (1963) 214 Cal.App.2d 100, 111 [29 Cal. Rptr. 170]; and see 1 Witkin, Summary of California Law (1960) Contracts, § 77, pp. 82-83; Note (1950) 63 Harv. L.Rev. 1013; Note (1954) 27 So.Cal. L.Rev. 496; Whittier, *The Restatement of Contracts* (1930) 18 Cal.L.Rev. 611, 626.) Defendants also rely upon the following principles: ''Consideration applies to the executory contract; after the contract is fully executed on both sides it becomes a closed incident and the question of consideration becomes immaterial.'' (*Schiffman* v. *Atlas Mill Supply Inc.* (1961) 193 Cal.App.2d 847, 853 [14 Cal.Rptr. 708].) Their further reliance on section 1614 of the Civil Code which provides, ''A written instrument is presumptive evidence of a consideration'' might better be placed on section 1040, which reads, ''A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity.'' In *Eastman* v. *Piper* (1924) 68 Cal.App. 554 [229 P. 1002], the opinion states: ''The instrument granting the easement was executed by appellant voluntarily. The court so finds, in substance and effect, and the evidence fully justifies the finding. As a transfer *in praesenti* the grant of the easement was an executed contract. No consideration, therefore, was necessary to its validity. (Civ. Code, § 1040; *Lieman* v. *Golly*, 178 Cal. 544 [174 P. 33].)'' (68 Cal.App. at p. 569.) If the grant of an easement may be so sustained it

would appear that a grant of a release of an easement would be equally so sustained. Plaintiffs have recognized this principle, but contend that the mere agreement does not rise to the dignity of a deed or grant. The agreement recites, however, ". . . MILLER does hereby release and abandon to . . . JOHNSTON, any easement, privilege, or license that he may own, or may have heretofore owned, with respect to the right of way or easement or license to use a roadway as it may encroach upon or cross upon any portion of the land owned by . . . JOHNSTON. . . ." These are words of present conveyance.

It is unnecessary to further explore all of the nuances raised by the foregoing respective contentions of the parties. The fundamental argument in support of the lower court's finding and conclusion is that the defendants did not give the plaintiffs anything to which they were not already entitled. In *Grant* v. *Aerodraulics Co.* (1949) 91 Cal.App.2d 68 [204 P.2d 683], the court observed, "An oral cancellation, however, is subject to the rules concerning contracts in general and hence must be supported by a sufficient consideration to be enforceable. [Citations.] . . . Since the amount of the indebtedness was undisputed, however, payment by the company of the lesser sum of $1,000 could not constitute a valid consideration for its cancellation, or for the termination of plaintiff's contractual rights against the company. (Civ. Code, § 1605 [other citations omitted].) 'It is an uniform rule of law that a consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do.' (*General Motors Accept. Corp.* v. *Brown*, 2 Cal.App.2d 646, 650 [38 P.2d 482].)'' (91 Cal.App. 2d at p. 75.) Plaintiffs cannot rely on this principle, first, because they surrendered their rights by a written instrument, and, second, because it cannot be said that their claim to use the triangle was undisputed. The defendants accused plaintiffs of trespassing. Their rights lay in parol subject to establishment by judicial proceedings. The situation is governed by the principle that an agreement to settle a bona fide disagreement is supported by sufficient consideration on each side. (*Nesbitt Fruit Products, Inc.* v. *Del Monte Beverage Co.* (1960) 177 Cal.App.2d 353, 361 [2 Cal.Rptr. 333]; and see 1 Witkin, *op. cit.*, Contracts, § 70, par. (f), and § 71, par. (d), pp. 74 and 76.) In the case last cited as a result of a dispute over the licensor's right to terminate a franchise right for cause, an agreement was entered into continuing the franchise for a fixed term. The court upheld the compromise agreement

as against the contention that there was no consideration because the licensor was already bound to grant the licensee the franchise, and distinguished *Grant* v. *Aerodraulics, Co., supra.*

An analogy is also found in the principle that a tenant is estopped to deny his landlord's title (See *People* v. *Rice* (1960) 185 Cal.App.2d 207, 211 [8 Cal.Rptr. 76]; 2 Witkin, *op. cit.*, Real Property, § 239, p. 1068.) If plaintiffs purported to surrender such rights as they might have had, and to enter upon the use of the property under the 1953 agreement, they cannot subsequently assert that their use was under the claim ostensibly surrendered. There is nothing in *Strong* v. *Baldwin* (1908) 154 Cal. 150 [97 P. 178, 129 Am.St.Rep. 149] which requires a contrary result. In that case the court rejected the contention that the holder of a prescriptive right to water and the use of a ditch over the lands of another lost those rights by leasing such rights for a period from one claiming to be the owner of the ditch. There, as in this case, there was a continual use of the rights which were in dispute. The court recognized that no prescriptive rights could be acquired during those years in which the rights were enjoyed under the lease, but that the lease would not estop the claimant from asserting rights which existed before it was executed. In that case, however, there was no dispute to be compromised, nor was there any agreement or conveyance purporting to surrender the previously acquired rights. (See 154 Cal. at pp. 160-162.)

It is concluded that the license agreement was valid and served not only to prevent the acquisition of any prescriptive rights during its term, but also as a relinquishment of such rights as plaintiffs may have been entitled to at the time it was executed.[6]

*Estoppel*

The findings state: "11. At the time defendants acquired their property in 1951 it was unimproved. In February, 1952, defendants applied to the City of Sausalito for a zoning variance to permit the construction of their improvement closer to the Southeasterly and Southwesterly boundary

---

[6]Although plaintiffs asserted in the lower court that Mrs. Miller could not be bound by a conveyance to which she was not a party (Civ. Code, § 172a), the husband as manager of the community was empowered to settle the disputed claim, and the wife's knowledge and acquiescence would bind her. (See *James* v. *LeDeit* (1964) 228 Cal.App.2d 474, 487-488 [39 Cal.Rptr. 559].)

lines of their property than normally permitted under the city zoning regulations. Defendants represented to the City of Sausalito that the granting of said variance and the construction of their residence in its present location under said variance would not interfere with the then existing use of the driveway or roadway from plaintiffs' property to Cloud View Road, including that portion of the driveway in the area of triangle B. The City Council of the City of Sausalito granted the variance to defendants, as representatives of the public and of the city and all of the residents therein, including plaintiffs, upon the express condition that there would be no interference with the use of said driveway. Defendants accepted said variance upon the stated conditions and constructed their residence in compliance therewith. Plaintiffs refrained from opposing the granting of said variance because of said conditions. Interference with plaintiffs' use of the driveway over triangle B would constitute a violation of said conditions.''

The conclusions state: ''3. Defendants are estopped to claim or assert that plaintiffs do not possess and own an easement over triangle B.''

The findings are supported by authenticated documents which set forth extracts from the tentative minutes of the Sausalito Planning Commission meetings of February 13 and 27, 1952, a communication from the planning commission to the city council dated February 16, 1952, and a resolution of the city council adopted February 19, 1952.[7]

The resolution fails to show an express condition that there would be no interference with the use of the driveway. Nevertheless, the evidence is sufficient to show that defendants so represented in order to induce their neighbors to consent to the requested variance, and that such consent was then secured.

These documents were examined by counsel for defendants and admitted into evidence without objection, but with the

---

[7]The planning commission minutes of February 13, 1952 recite, ''All lots surrounding the applicant's property are already built upon and he claimed that the proposed variance will not adversely affect the light, air or access to adjacent lots.'' The minutes reflect that the concerned property owners were present in person or by spokesmen. The letter to the city council refers to their presence and continues, ''After being assured that there would be no disturbance of the private lane or accesses to adjoining lots, no objections to the granting of the variance was voiced, except [as was not material to this controversy].'' The resolution recites, ''Whereas . . . . There would be no disturbance of the private lane or accesses to adjoining lots.''

court's comment, acceded to by counsel for plaintiffs, ''All right, as bearing simply on the equities.''

Defendants not only attack the sufficiency of the evidence to sustain the findings in the particulars which have been noted above, but also contend that it was error to make findings of fact and conclusions of law on this theory of the case because it had not been pleaded in plaintiffs' complaint, nor had it been referred to in the pretrial order (see *Holzer* v. *Reed* (1932) 216 Cal. 119, 124 [13 P.2d 697]; and *Marks* v. *Bunker* (1958) 165 Cal.App.2d 695, 699 [332 P.2d 340]), that estoppel cannot be used offensively (see *Peskin* v. *Phinney* (1960) 182 Cal.App.2d 632, 636 [6 Cal.Rptr. 389]), and that in any event the 1953 agreement terminated any rights which plaintiffs might have acquired by reason of the defendants' representation and action in securing a variance. Plaintiffs assert that since the evidence was received without objection, the court properly considered the issue of whether an easement had been established by estoppel over such of the existing paved driveway as encroached on plaintiffs' property adjacent to the area where the defendants' garage was constructed. (See *Pacific Finance Corp.* v. *Foust* (1955) 44 Cal. 2d 853, 858 [285 P.2d 632]; *Wynn* v. *Treasure Co.* (1956) 146 Cal.App.2d 69, 75 [303 P.2d 1067]; and *Foster* v. *Fisher* (1941) 44 Cal.App.2d 33, 37 [111 P.2d 935].)

The complaint in the first cause of action alleged that plaintiffs are the owners of an easement. In the second cause of action, plaintiffs sought to set aside the 1953 agreement, and in the third cause of action they sought to establish their rights on equitable grounds. The issues set forth in the pretrial order do not encompass estoppel, but do include, ''Whether a balancing of the equities requires that defendants continue to permit plaintiffs to use the driveway improvements in the fashion in which they have historically been used.'' The evidence was properly offered and received on the last issue. Therefore, it would be unjust to interject a new theory in the case because defendant failed to object when the evidence was offered on a proper issue. (See *Marks* v. *Bunker, supra,* 165 Cal.App.2d 695, 699.) Moreover, for the reasons set forth above any rights to an easement which the plaintiffs acquired prior to 1953 were merged in the agreement executed in that year. The court erred in concluding that the defendants were estopped to claim or assert that plaintiffs do not possess and own an easement over Parcel 1. Nevertheless, the evidence was properly received, and could be considered by the court in determining the relative equities of the parties.

*Equitable Rights of Plaintiffs*

██ The court further found: "12. It is physically possible but extremely difficulty and impractical to drive a motor vehicle of normal size along the true recorded easement from Cloud View Road to the residence of plaintiffs and it would be an extreme hardship on plaintiffs to require them to confine their vehicular movements to the recorded easement, without using triangle B.

"13. It is easily possible to develop and use triangle B for the joint purposes of plaintiffs and defendants and, if any damage or harm will result to defendants if plaintiffs are allowed to continue to use said triangle B, such damage or harm will be nominal only.

"14. It is just and equitable that plaintiffs maintain the improvements upon triangle B at their own cost and expense and adjust and use the same so as to permit the near maximum use by defendants while allowing reasonable ingress and egress for their own purposes."

It concluded: "4. It is just and equitable that plaintiffs be allowed to continue the use of their easements over Areas A and B, but that plaintiffs be required to bear the cost of maintaining the improvements over triangle B and to adjust their use of the same so as to permit near maximum use by defendants while allowing reasonable ingress and egress to plaintiffs' property."

In order to resolve the questions raised by this issue it is necessary to consider other evidence before the court. The variance obtained in 1953 enabled the defendants to place their garage in the southwest portion of their property about 9 feet back from their true property line along the recorded easement, and within 3 feet of the plaintiffs' property. Because of the grade of the easement, which slopes down from Cloud View Road to the plaintiffs' property, the access to the upper side of the double garage is down grade at a slight slope, whereas that to the lower side is at an upward slope varying from approximately even grade at the center of the garage to a 3.6 foot rise at the southwesterly corner of the garage. According to Mrs. Johnston two cars had been damaged because the access was so impassable. Plaintiffs' expert acknowledged that it would be extremely difficult to use that side of the garage.

The plaintiffs introduced expert testimony which supported findings "12" and "14" above. Both parties agreed that the judge should view the premises, and his observations, em-

bodied in his "Memorandum of Partial Decision" (see fn. 1, *supra*), serve to specifically confirm the principle that "the trier of fact's view of an area is independent evidence which can be considered by him in arriving at his conclusion and is substantial evidence in support of findings consonant therewith. [Citations.]" (*Key* v. *McCabe* (1960) 54 Cal.2d 736, 739 [8 Cal.Rptr. 425, 356 P.2d 169]; see also Witkin, Cal. Evidence (2d ed. 1966) § 645, p. 607; and cf. *Sylva* v. *Kuck* (1966) 240 Cal.App.2d 127, 136-137 [49 Cal.Rptr. 512].)[8]

Despite defendants' difficulties with the access to the lower side of their garage, the plaintiffs were permitted to use the triangle under the license until 1963. An altercation developed as the result of the plaintiffs' complaint about the discharge of some water on their property. On October 22 , 1963, the defendants wrote Mr. Miller, "Mrs. Miller's unexplained rudenesses prompts us to reclaim the corner of our property used by you for entrance into your area, and in accordance with the agreement signed by you September 18, 1953 requiring at least 30 days notice we hereby require that you make other arrangements to enter your area on or before September 19, 1964."

September 19, 1964 came and went and the plaintiffs continued to use the area. On August 19, 1965, Mr. Johnston wrote Mr. Miller terminating the license, according to its terms on September 18, 1965. Thereafter as a result of a survey made for the plaintiffs and communicated to the defendants, the defendants removed a pump house on the southeasterly boundary of their property which encroached between .84 and 1.58 feet on plaintiffs' land. The plaintiffs had made no request for its removal. On October 13, 1965, the defendants applied for a building permit to build up the area adjacent to the lower end of their garage by about three feet and grade it out to the true property corner. In order to protect users from the drop-off which would result, a fence

---

[8] Among the court's observations are the following: "1. If the Johnston title is established to the rear triangle as shown on Exhibit P-1, and if the Millers are unable to get space from the Linehans, then the entrance to the Miller property will be completely unsatisfactory. The Millers may still be able to get in after making numerous turns and back-ups but it would be an extreme hardship on the Millers to require them to use what is left of the easement." He indicated that if the Johnston's property were kept inviolate, in order to furnish the Millers with an equivalent entrance it would be necessary to acquire an easement from the Linehans which would be satisfactory to the utilities and the city, to acquire easements for relocating the utility pole and overhead wires, and, possibly, to construct a bulkhead.

was proposed from the true corner in the access road along the lower property line. This lawsuit ensued.

Defendants rely on the following principle: "It is, of course, a fundamental principle of eminent domain law that the taking for a private purpose is without authority in law as violative of the California and federal Constitutions which prohibit the taking of the property of a citizen for private use. (U.S. Const., Fifth and Fourteenth Amends.; Cal. Const., art. I, § 14 [other citations omitted].) " (*People* ex rel. *Dept. of Public Works* v. *Lagiss* (1963) 223 Cal.App.2d 23, 40-41 [35 Cal.Rptr. 554].) "When a court of equity balances conveniences to determine that an injunction, otherwise warranted, should be withheld, its action approaches an exercise of the right of eminent domain in favor of a private person." (*Farrington* v. *Dyke Water Co.* (1958) 50 Cal.2d 198, 200 [323 P.2d 1001]. See also *Pahl* v. *Ribero* (1961) 193 Cal.App. 2d 154, 164 [14 Cal.Rptr. 174]; and *Christensen* v. *Tucker* (1952) 114 Cal.App.2d 554, 560 [250 P.2d 660].) ▮ On the other hand, the creation or recognition of right of way or servitude under common law principles is not a taking of property without just compensation in violation of constitutionally guaranteed rights. (*Reese* v. *Borghi* (1963) 216 Cal. App.2d 324, 329 [30 Cal.Rptr. 868].)

▮ The question here is whether the defendants, who prayed in their answer for an injunction restraining plaintiffs' use of Parcel 2, and for a judgment quieting their title to that property may be denied the injunctive relief, and whether the plaintiffs may be allowed to continue the use of that parcel.

Preliminarily, it should be noted that the agreement does not preclude the plaintiffs from raising the relative hardship doctrine. The execution of the agreement, and the exercise of rights over Parcel 2 under the revocable license it conferred, in no way changed the physical features involving the recorded easement, the relative property lines, and the improvements erected and planted by the respective abutting property owners and utility companies. Upon revocation of the license the plaintiffs found themselves disarmed of the claim of a prescriptive right arising before 1953, but there is no reason they should not be restored to the position of a landowner who is entitled to assert a claim of relative hardship against what is an innocent trespass.

The doctrine is fully expressed in *Christensen* v. *Tucker, supra,* where the opinion after reviewing the earlier prece-

dents holds: "It is our view that the better reasoned cases hold that in encroachment cases the trier of the fact possesses some discretion in determining whether to grant or to deny the mandatory injunction. In exercising that discretion, and in weighing the relative hardships, the court should consider various factors. It starts with the premise that defendant is a wrongdoer, and that plaintiff's property has been occupied. Thus, doubtful cases should be decided in favor of the plaintiff. In order to deny the injunction, certain factors must be present: 1. Defendant must be innocent—the encroachment must not be the result of defendant's willful act, and perhaps not the result of defendant's negligence. In this same connection the court should weigh plaintiff's conduct to ascertain if he is in any way responsible for the situation. 2. If plaintiff will suffer irreparable injury by the encroachment, the injunction should be granted regardless of the injury to defendant, except, perhaps, where the rights of the public will be adversely affected. 3. The hardship to defendant by the granting of the injunction must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. But where these factors exist, the injunction should be denied, otherwise, the court would lend itself to what practically amounts to extortion." (114 Cal.App.2d at pp. 562-563. See also *Brown Derby Hollywood Corp.* v. *Hatton* (1964) 61 Cal.2d 855, 858 [40 Cal.Rptr. 848, 395 P.2d 896]; *Dolske* v. *Gormley* (1962) 58 Cal.2d 513, 520-521 [25 Cal.Rptr. 270, 375 P.2d 174]; *D'Andrea* v. *Pringle* (1966) 243 Cal.App.2d 689, 695 [52 Cal.Rptr. 606]; *Pahl* v. *Ribero, supra,* 193 Cal.App.2d 154, 163; and *Baglione* v. *Leué* (1958) 160 Cal.App.2d 731, 734-735 [325 P.2d 471].)

In the foregoing cases the courts were dealing with fixed structures which encroached on the property of another. There is no difference in principle, only in degree, between a driveway which cuts across a corner of lands of another and so encroaches 24 hours a day, and the transitory passage of vehicles which intermittently invade such lands. Some analogy is found in *Baldocchi* v. *Four Fifty Sutter Corp.* (1933) 129 Cal.App. 383 [18 P.2d 682], where the doctrine, therein termed "balancing of conveniences" was used, as in this case, to provide for proper access and egress into the property of the alleged wrongdoer. The court upheld a judgment which deprived an adjacent property owner of the right to restore a

portion of a four-foot sidewalk easement which served his property. (129 Cal.App. at pp. 392-395.)

Applying the tests suggested in *Christensen* produces the following results. The plaintiffs are innocent of any wrong-doing. The required encroachment was not the result of any act or omission on their part. The driveway was misdesigned and misaligned, and the improvements surrounding it were all apparently established when plaintiffs acquired their property. If they were negligent, it was only in not pressing such claim as they might have had to a prescriptive easement in 1953.

The defendants will not suffer irreparable injury if the plaintiffs are permitted to continue to pass over Parcel 2. By virtue of the improvements constructed on defendants' property, the questioned area can only be used for driveway purposes. In applying for their variance, defendants represented that they would not use their property so as to adversely affect the access to adjacent lots. The only harm to defendants is the loss of the full enjoyment of a grade of their own choice. The findings and judgment make it clear that the present unsatisfactory grade may be modified "so as to permit near maximum use by defendants while allowing reasonable ingress and egress to plaintiffs' property."

The hardship to the plaintiffs by granting the defendants the relief they seek is greatly disproportionate to the hardship caused to the defendants by the continuance of the use by plaintiffs. The evidence clearly shows that if plaintiffs are denied the right to continue the use of the defendants' property they cannot secure practical access to their property without affecting the existing property rights of their other neighbors, and the utility companies, and without the expenditure of considerable sums for realignment and improvements.

It is concluded that the court properly granted relief to plaintiffs and denied defendants an injunction. The fact that plaintiffs instituted the litigation does not change the relative rights and obligations of the parties. In fact it shows that plaintiffs wished to proceed in good faith rather than tortiously. The court properly adjudged that title to both parcels was vested in defendants, subject to the rights of plaintiffs. (See *Christensen* v. *Tucker, supra,* 114 Cal.App.2d 554, 563.) Since the plaintiffs' rights are established under the principle of relative hardship and not under their prior claim, the defendants are entitled to damages which the court has determined on the evidence introduced by plaintiffs to be $200. As

308

the case must be remanded for correction of the findings of fact, conclusions of law and judgment, the court should also make findings, in accordance with the evidence, on the facts establishing the relative hardship. (See *D'Andrea* v. *Pringle, supra,* 243 Cal.App.2d 689, 695-696.) The court should also establish the grade for the joint use of Parcel 2, taking further evidence for that purpose if necessary.

The judgment is affirmed as to Parcel 1. The judgment is reversed as to Parcel 2 insofar as it fails to award damages to defendants for the rights thereby created in plaintiffs, and is otherwise affirmed. The case is remanded for correction of the findings of fact, conclusions of law and judgment in accordance with the views set forth herein. Let the parties bear their own costs on appeal.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 18, 1969.